# Wilkinson *v.* Searcy.

*Bill of Interpleader by Purchaser of Land.*

| | |
|---|---|
| 74 | 243 |
| 93 | 82 |
| 74 | 243 |
| 100 | 671 |
| 74 | 243 |
| 130 | 273 |
| 74 | 243 |
| 142 | 673 |

1. *When bill of interpleader lies.*—When mortgaged lands are sold and conveyed by the mortgagor, by deed with covenants of warranty, the purchaser paying part of the price in cash, and giving his note for the residue; if the note secured by the mortgage and the note for the unpaid purchase-money are afterwards transferred to different persons, the purchaser can not maintain a bill of interpleader against them.

2. *Abatement of purchase-money.*—When lands are conveyed with covenants of warranty against incumbrances done or suffered by the vendor (Code, § 2193), and are at the time subject to an outstanding mortgage executed by him, this is a breach of his covenants of warranty, which entitles the purchaser to claim an abatement of his note for the unpaid purchase-money, to the extent of the balance due on the mortgage debt, unless his note has been assigned to a third person, and he has estopped himself from setting up that defense against the assignee.

3. *Estoppel en pais against maker of note.*—If a person who is about to purchase, or take an assignment of a promissory note, applies to the maker for information, is assured by him that there is no defense against it, and buys the note on the faith of that representation, the maker is estopped from setting up against him any defense which then existed.

4. *Revision of chancellor's decision on facts.*—The burden of proof being on a party who asserts an estoppel *en pais*, and the evidence being conflicting, if the chancellor holds the evidence insufficient to establish it, this court will not reverse his ruling, " unless clearly convinced that he erred."

5. *Errors not injurious to appellant.*—When errors are assigned by one only of several appellants, this court will only consider errors which are prejudicial to him.

[Wilkinson v. Searcy.]

6. *When appeal lies.*—An appeal lies only from a final decree, except where the statutes expressly give an appeal from an interlocutory decree.

APPEAL from the Chancery Court of Lowndes.

Heard before the Hon. JNO. A. FOSTER.

The original bill in this case was filed on the 12th December, 1881, by Francis M. Searcy, against W. W. Wilkinson, Jacob L. Schley, and others; and sought, principally, a decree ascertaining how much the complainant should be compelled to pay, and to whom, on a note which he had given for a part of the purchase-money for a tract of land sold and conveyed to him by said Schley, and to enjoin the several defendants from asserting any claim or title to the land. The tract of land contained 150 acres, and was sold and conveyed by said Schley to complainant in November, 1880, at the price of $2,000; of which sum, one half was paid in cash, and for the other half the purchaser executed his promissory note, payable on the 1st October, 1881, to the order of Thomas E. Hall. This note was transferred by Hall, for value, to said W. W. Wilkinson, who brought suit on it against the maker; and the bill prayed an injunction of this action at law, until the court should determine to whom the money due on it should be paid. At the time of the sale and conveyance by Schley to complainant, there was an outstanding mortgage on the land, given by said Schley to secure the delivery of ten bales of cotton, according to the terms of a written obligation signed by him, which was dated December 13th, 1878, and in these words: "On the 1st day of October, 1879, I promise to deliver in Fort Deposit, Alabama, to William Hamilton, ten bales of cotton, averaging 500 lbs.; four bales to bear 8 pr. ct. interest, and six bales to be delivered at said place on the 1st October, 1880." This mortgage and obligation were transferred by said Hamilton, about the 1st August, 1879, to one Lightfoot, who afterwards transferred them to the administrator of the estate of James H. Witherspoon, deceased; and on the settlement of the administration of said estate, said mortgage and obligation became the property of the heirs and distributees, who afterwards brought an action of ejectment to recover the land, claiming under the mortgage. The bill alleged that "the heirs of said Witherspoon claim that a large sum, to-wit, the sum of $1,000, is still due on said obligation given to said Hamilton, and that said sum is a lien on said land secured by said mortgage; while said Schley and said Wilkinson both insist that said note or obligation has been fully paid." The Witherspoon heirs were made defendants to the bill, and an injunction of their action of ejectment was prayed. The bill alleged, also, that "complainant is ready and offers to pay whatever sum may be due

on his said note, to whomsoever this honorable court may decree is entitled to the same; and he has been so ready ever since said note fell due, and has only been prevented from paying said note by the fact that it was claimed by said Wilkinson and said Witherspoon heirs, and complainant did not and could not know to whom he could safely pay the sum due by him." The prayer of the bill was in these words: "Orator prays that your honor decree what amount, and to whom, orator is to pay on said note; that your honor decree that, on payment of the sum that may be so decreed, each of said defendants, and all persons holding under either of them, be perpetually enjoined from asserting any claim or title to said land; and orator prays for general relief."

An answer to the bill was filed by Wilkinson, alleging, among other things, that he purchased said note from Hall, for a valuable consideration, on the 10th June, 1881; "that when he was about to purchase said note, and before he did purchase it, respondent went to said complainant, and informed him of his intention to purchase or trade for said note, and inquired if complainant had any defense to said note; that complainant then said to this respondent, that he had no defense, that it was 'all right,' and that he would pay said note at its maturity; and afterwards, relying upon these statements and this promise, respondent purchased said note from said Hall, for a valuable consideration, and said Hall indorsed said note to this defendant. Defendant sets up these facts by way of plea, as well as answer." A demurrer to the bill for want of equity, because it did not present a proper case for interpleader, was incorporated in the defendant's answer.

An amended bill was afterwards filed, alleging that said Schley "is insolvent, and, for this reason, his warranty in said deed is of no value to orator;" and an answer to the amended bill was filed by Wilkinson, denying its allegations, requiring proof thereof, and repeating his grounds of demurrer as assigned to the original bill. It is unnecessary to notice the pleadings of the other defendants.

The chancellor overruled the demurrers to the bill, and also overruled a motion to dimiss for want of equity; and at a subsequent term, under a submission on pleadings and proof, holding that Wilkinson had failed to establish his plea of estoppel, he rendered the following decree: "It is therefore ordered, adjudged and decreed, that the several demurrers of the defendants are hereby overruled, and the injunction against W. W. Wilkinson is hereby retained until the further order of the court. It is further ordered, adjudged and decreed, that the defendants who are now shown to be the holders of the mortgage made by Schley to Hamilton, to-wit, are entitled to a fore-

[Wilkinson v. Searcy.]

closure of the same, it appearing from the testimony that a portion of the same remains due and unpaid. It is therefore referred to the register to state an account, and that he ascertain. and report how much is still due upon said mortgage, principal and interest, after allowing all legal and equitable credits to which the same is entitled. All other questions are reserved until the coming in of said report."

The appeal is sued out by Wilkinson, and he alone assigns errors. The errors assigned are, the overruling of the demurrers to the bill, the overruling of the motion to dismiss, and each part of the final decree.

J. C. RICHARDSON, and JNO. GAMBLE, for the appellant.—(1.) The bill was without equity, because the facts stated do not authorize an interpleader.—Adams' Equity, §§ 202–03 ; 2 Story's Equity, §§ 809–14, 820–22 ; Story's Eq. Pl. §§ 292–97 ; *Hayes v. Johnson*, 4 Ala. 267 ; *Gibson v. Goldthwaite*, 7 Ala. 888 ; 4 Wait's Actions and Defenses, 151–53. (2.) Without regard to the merits or defects of the bill, the defense set up by Wilkinson presents a clear equitable estoppel.—*Plant & Co. v. Voegelin*, 30 Ala. 160 ; *Cloud v. Whiting*, 38 Ala. 59 ; *Drake v. Foster*, 28 Ala. 654 ; *McCravey v. Remson*, 19 Ala. 430 ; Story's Eq. Pl. § 267 *a*; *Adams v. Steele*, 21 Ala. 534 ; *Com. v. Moltz*, 10 Barr, Penn. St. 527.

COOK & ENOCHS, and R. M. WILLIAMSON, *contra.*

STONE, J.—The present bill appears to have been drawn with the intention of making it a bill of interpleader, and counsel seem to regard it as falling within that class. So treating it, it is contended for appellant, that his testimony shows a right in him to recover of Searcy, independently of any liability the lands purchased by the latter may rest under, by reason of the Hamilton note and mortgage, now held and claimed by the Witherspoons. Wilkinson's interest, and only interest in this controversy, would seem to be, first, to show that Searcy had estopped himself from setting up the incumbrance created by the Hamilton mortgage, as a defense to the note held by him, Wilkinson ; and failing in this, second, to reduce the sum of that incumbering indebtedness to as low a figure as possible.

The facts of the case are about as follows : On the 13th day of December, 1878, one Schley executed an obligation in writing to Hamilton, to pay him certain bales of cotton, and contemporaneously he and his wife executed a mortgage on a described tract of land, of about one hundred and fifty acres, to secure its payment. This mortgage was proved, certified, and recorded in the proper office, in due time. This written obli-

[Wilkinson v. Searcy.]

gation to deliver cotton was transferred two or three times, until it became the property of the Witherspoon distributees. It passed from the Hamilton estate prior to June 10th, 1881. In November, 1880, Schley sold, and he and his wife conveyed, the same lands to Searcy, at the agreed price of two thousand dollars, one half of which was paid in cash; and for the remaining thousand dollars, Searcy executed his note, due October 1st, 1881. This note was made payable to one Hall,—for what purpose is not shown,—and it recites the consideration upon which it was given. The deed from Schley and wife to Searcy contains the words "grant, bargain and sell," and hence contains the statutory covenant of warranty against "incumbrances done or suffered by the grantor."—Code of 1876, § 2193. This note was traded and indorsed by Hall to Wilkinson, for a valuable consideration, on the 10th day of June, 1881. No question is, or probably can be raised, on the fact that the note is made payable to Hall, instead of Schley, the vendor of the land.

It will thus be seen, that the claim of the Witherspoons rests on a note executed by Schley to Hamilton, secured by a mortgage on the lands. Searcy is not personally liable for this debt. The most that can be affirmed of it is, that the lands he purchased from Schley are bound for its payment. Wilkinson's claim is the personal debt and contract of Searcy, secured probably by a vendor's lien on the same land. It requires no argument to show that these two claims are not for one and the same fund or debt. Searcy owes one of the debts—that to Wilkinson. He does not owe the other. The facts do not warrant a bill of interpleader, properly so called. Hamilton, and those claiming under him, are not placed in fault. The mortgage, properly proven, was recorded in time; and this gave notice to all persons, of its existence and contents. It was Searcy's own *laches* that he did not search the record, and he shows no right to shift on to the shoulders of the Witherspoons the burden of defending him against Wilkinson's claim. His own undue, if not blind confidence, has exposed him or his lands to the double liability.—2 Story's Equity, §§ 806–7, 820, 821, 822, 824, 824 *a*; 4 Wait's Ac. &. Def. 153–4.

.2. But there is an aspect in which the present bill, as amended, does contain equity. Schley is shown to be insolvent, so that Searcy can obtain no reimbursement by suit on the covenants of his deed, in the event the Witherspoon claim is valid, and there is anything due upon it. That being a prior incumbrance on the land, of Schley's own creation, it is a breach of the covenants of his deed; and to the extent that Searcy may have his land charged by that incumbrance, he may set it off, and claim a corresponding rebate from his unpaid purchase-money

note, unless he has estopped himself from making that defense against Wilkinson, the present holder.—*Smith v. Pettus*, 1 Stew. & Por. 107 ; *McLemore v. Mabson*, 20 Ala. 137 ; *Walton v. Bonham*, 24 Ala. 513 ; *Kelly v. Allen*, 34 Ala. 663, 670.

3-4.  Under this principle, the inquiry arises, has Wilkinson proven the truth of his plea, that before he purchased the note, he inquired of Searcy, and that the latter informed him he had no defense to the note, save a cross demand against Schley of $189 ; and that relying on Searcy's said statement, he (Wilkinson) purchased the note, and entered the credit of $189 claimed by Searcy.  The chancellor, passing on the testimony, found this issue of fact against Wilkinson.

As stated by the chancellor, the *onus* of proving the truth of this plea rested on Wilkinson.  The testimony is in irreconcilable conflict.  Wilkinson and his son, C. L. Wilkinson, testify to the truth of the plea.  Searcy testifies that he made no such representation.  Lightfoot testifies that Wilkinson did have knowledge of the debt and mortgage to Hamilton.  Reid testifies that, while acting as agent for Wilkinson, in attempting to collect a debt due from Schley to Wilkinson, he learned that the debt and mortgage from Schley to Hamilton existed, but he did not know whether Wilkinson knew it or not.  All this testimony relates to a time anterior to June 10th, 1881, when Wilkinson purchased the Searcy note.  We can not say we are "clearly convinced" the chancellor erred in pronouncing on this disputed question of fact.—*Nooe's Ex'r v. Garner's Adm'r*, 70 Ala. 443.  We incline to the opinion, that all the interested parties had knowledge of the Hamilton debt and mortgage, but they believed it invalid, and did not regard it in their dealings as opposing any obstacle.

5.  Wilkinson alone assigns errors in this case, and we can consider no question that does not affect him.  As we have said above, the bill contains equity, and presents a case for injunction against him.  He has failed to establish the truth of his plea in avoidance of that equity, and it results, that the chancellor rightly refused to dissolve the injunction.  He retained it, and rightly retained it, until it should be ascertained whether any thing, and now much, was due to the Witherspoons on the Hamilton mortgage.  When that is ascertained, a perpetual injunction should be ordered, of so much of the Wilkinson debt as is equal to the sum found due to the Witherspoons, if any thing.

As we have said, any other questions than those affecting Wilkinson, we do not, and can not consider, under his assignments of error.  He is interested in the question of indebtedness *vel non*, under the Hamilton mortgage, and the extent of

[May v. Marks.]

it. That question has not been passed on by the chancellor; and hence it has not been determined to what extent, if any, Searcy is entitled to relief against Wilkinson. That question is the real equity in this case. Schley testifies, that while Lightfoot held the Hamilton note and mortgage, he, Schley, paid ten bales of cotton on it, and that he owes nothing. If that debt is paid, then Searcy's bill, as against Wilkinson, is without merit. This is the *gist* of the suit, and, it would seem, further proof is necessary; at all events, it has not been decided.

The decision of the court below was not rendered on the pleadings. It was on the evidence. The appeal is prosecuted, not from an interlocutory decree, but from what is claimed to be a final decree. The final relief claimed in this case is a perpetual injunction of the whole or a part of the Wilkinson claim. Till that decree is pronounced, there is no final decree in this cause.—Code of 1876, § 3918.

We should, perhaps, add, there is nothing in the pleadings or evidence in this record, which invalidates the mortgage given to Hamilton. The question, as now presented, is, whether there is any thing, and how much, due upon it.

Appeal dismissed.