# Morris & Co. *v.* Alston.

*Bill in Equity for Injunction of Sale under Mortgage, Account, &c.*

1. *Variance between allegations and proof.*—Where the mortgagor files a bill to enjoin a sale under the mortgage by an assignee, alleging usury in the mortgage debt, and payment to the mortgagee after deducting the usurious interest, he can not have a decree on proof showing that the original debt was extinguished by the transaction by which the assignee acquired the mortgage, having advanced to him the money with which he paid the debt, and afterwards procured an assignment of the mortgage.

2. *Parol agreement for substitution of mortgage debts.*—In a suit between the mortgagor and an assignee of the mortgage, who attempts to foreclose by sale under the power, the latter can not set up a parol agreement between them, at the time he advanced the money with which the debt to the mortgagee was paid, that the mortgage should stand as security for the money so advanced; especially when the conduct of the parties, at the time and afterwards, shows a different understanding.

3. *Estoppel against mortgagor, in favor of assignee; usury.*—The mortgagor is not estopped from setting up usury in the mortgage debt, as against the assignee who advanced the money paid to the mortgagee, afterwards taking a transfer of the mortgage to himself, when the evidence shows that the money was advanced at the instance of the mortgagee, that the mortgagor himself made no statements, and that nothing was said in his presence which required him to speak.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JOHN A. FOSTER.

The appellee, John M. Alston, filed this bill of complaint against the appellants, Josiah Morris & Co. and Lehman, Durr & Co. The bill alleged that on January 7, 1887, the complainant and his wife executed a mortgage on certain lands to Lehman, Durr & Co. to secure a note for seven thousand dollars; that by the mortgage, the complainant was required to

[Morris & Co. v. Alston.]

deliver to Lehman, Durr & Co. seven hundred bales of cotton, and in default of delivery of the said number of bales of cotton, to pay certain storage and commissions, as liquidated damages, on each bale not delivered, and that Lehman, Durr & Co. knew that complainant could not deliver the amount of cotton stipulated for in the mortgage. The bill then alleges that the consideration of the note, which the mortgage was given to secure, was a balance claimed by Lehman, Durr & Co. to be due to them on transactions which commenced in 1881 with Alston & Brother, a firm of which complainant was a member, and had been continued from year to year. It was further averred that the balance alleged to be due was made up of usurious interest charged by Lehman, Durr & Co. on each year's transactions, which usury consisted of storage and commissions on cotton not delivered. The bill then alleges the execution of another mortgage on the 3d of January, 1888, for the sum of $2058, and another contract to deliver cotton, with stipulations for storage and commissions on the cotton not so delivered under the contract; and it also alleges the execution of another mortgage on May 3, 1888, for the sum of $200, and containing another contract for the delivery of cotton, with the same stipulations as to the storage and the commissions for the sale thereof. The 4th paragraph of the bill contains an averment that the indebtedness secured by the mortgage of 1887 had been wholly paid, after the usurious interest should be deducted, but offers, if any thing is due, to pay the same, with lawful interest. This paragraph contains the same allegations as to the mortgages of 1888. The 5th paragraph of the bill avers, that some time in the year 1889, Lehman, Durr & Co. pretended to sell and transfer the three mortgages to Josiah Morris & Co., "for some pretended consideration not known to orator." It then averred, that at that time the debts were past due, and that nothing was due on them, but offered, if any thing was due, to pay the same to whomsoever it might belong. It then further averred that Josiah Morris & Co. had advertised the lands described in the mortgages for sale under the power contained therein. The bill prayed for an injunction restraining the sale of the land, asking for a settlement of the mortgage accounts, a reference being had to the register to ascertain the amount due, and to whom; and offered to pay whatever might be found to be due on the mortgage debts.

The respondents answered, admitting the execution of the mortgages as alleged in the bill, and that they contained the contracts to deliver cotton as alleged. But they denied, in their answer, that Lehman, Durr & Co. knew that complainant

could not deliver the amount of cotton, and averred, on the contrary, that complainant was able to deliver the several amounts stipulated to be delivered.   The 4th paragraph of the answer sets up that on January 19th, 1889, Josiah Morris & Co. advanced to complainant, at his request, the sum of $6875,. and that he executed to them his note for that amount payable in thirty days; that complainant represented to them that he needed the money, or the greater part of it, to pay a debt due by him to Lehman, Durr & Co., and that if they would advance it, Lehman, Durr & Co. would transfer to them the several mortgages held by them as security for the payment of the amounts so advanced; that it was represented to Morris & Co. that complainant had perfected arrangements, or would be able to do so, whereby he could obtain the money in a short time with which to re-pay the amount advanced to him by them; that relying upon these representations, they did advance him the money, as aforesaid, feeling secure in the same, and took his note therefor, with legal interest; that thereupon a member of the firm of Lehman, Durr & Co. indorsed upon each of the mortgages an assignment of the same to Josiah Morris & Co., without recourse upon them; that complainant afterwards went to the office of Lehman, Durr & Co., and out of the money so advanced to him by Morris & Co. paid Lehman, Durr & Co. the sum of $4572.70, the amount due them on his account, and retained the remainder of the amount borrowed from Morris & Co. to be used by himself.   The answer of Morris & Co. averred that they did not have any notice whatever that the claim of Lehman, Durr & Co. against the complainant was not a just and honest debt; or that complainant had any defense whatever to the same; that the amount paid to Lehman, Durr & Co. was paid after the complainant had left the office of Morris & Co., and the same was paid by him freely and voluntarily.   The answers then contain suitable allegations as to the clause in the mortgage to pay the attorney's fees in case it became necessary to employ one to foreclose the same.

The facts as gathered from the published testimony, are, that it was undisputed, that on January 19, 1889, complainant and Joseph Goetter, of the firm of Lehman, Durr & Co., went to the banking house of Josiah Morris & Co.; that there complainant obtained a loan of the amount stated in the bill, executing his note therefor; that Morris & Co. gave him a check upon themselves for said amount; that he took the check, and,. going back to the office of Lehman, Durr & Co., endorsed it to them, turned it over to their cashier, requested a receipt for the full amount of his check, and to deliver the balance of the

[Morris & Co. v. Alston.]

check to him in cash; that the said cashier did deliver to him a statement of his account with Lehman, Durr & Co. up to that time receipted, and turned over to him the balance of the check in cash; that the receipted account was taken by complainant, and on the day of his examination as a witness in this cause he then had it in his possession. It was also beyond dispute, that Lehman, Durr & Co. did not make a transfer of the mortgages held by them against complainant on the same day on which the loan was obtained from Morris & Co.; and also, that it was stated at the time the money was borrowed, that the money was to be used in paying to Lehman, Durr & Co. the debts secured by the said mortgages. It was also undisputed, that Alston did not, at the time he took the receipted account, demand of Lehman, Durr & Co. the delivery to him of the mortgages which were given to secure the indebtedness embraced in the account paid, nor did he at any time thereafter make such demand. The principal question of dispute was, as to whether the mortgages were transferred to Morris & Co. with the complainant's knowledge and consent. On this point Alston, the complainant, testified that, when he went to the banking house of Morris & Co., Mr. Goetter had a package of papers in his hands, which he handed to Mr. Morris, and that he heard Mr. Goetter say, "Here are those papers;" and to this Mr. Morris remarked, "Have you examined them?" and Mr. Goetter replied that he had. He testifies, however, that there was no arrangement between him and Mr. Goetter that the papers were to be transferred as a security for this loan from Morris & Co. On the contrary, Mr. Goetter and Mr. Roman testified that it was understood and agreed before Mr. Goetter and complainant went to the bank of Morris & Co., that the money was to be obtained, and the mortgages transferred to secure the same. Mr. Billing, with whom the transaction was had (it being shown that Alston was mistaken about it being Mr. Morris), also testified that when Alston came to get the money, the papers were brought by Mr. Goetter; that in Mr. Alston's presence and hearing, he asked Mr. Goetter if the security which Alston proposed to give was all right, and Mr. Goetter replied that it was; that Mr. Billing then took the papers in his hand, and handed them back to Mr. Goetter, in order that he might go back to his office and have the transfers made. The testimony of Mr. Billing and Mr. Goetter was direct and positive as to Alston's knowledge that this money was to be obtained on these transfers, and Roman was positive in his testimony that Alston agreed, before they went to get the money, that it should be obtained on the said transfers.

On final hearing, upon the pleadings and proof, the chan-

[Morris & Co. v. Alston.]

cellor decreed that the complainant was entitled to the relief prayed, and ordered a reference for an account, and instructed that the register should not allow the charges for storage and commissions for the sale of the cotton which was agreed to be delivered, but was not so delivered, if such charges were found to be made as a cover for usury.

The defendants prosecute this appeal, and assign the decree as error.

TOMPKINS & TROY, and WATTS & SON, for appellants.—1. As Alston recognized, in the allegations of his bill, that the mortgages are valid for the amount due on the debt secured by them, and offers to pay the same to whomsoever it may be due, he can get no relief upon the theory that the debts secured by the mortgages were paid by the payment of the account of Lehman, Durr & Co.—*McGehee v. Lehman, Durr & Co.*, 65 Ala. 316; *Sandford v. Ochtalomi*, 23 Ala. 669; *Spoor v. Phillips*, 27 Ala. 193; *Gilmer v. Wallace*, 75 Ala. 220; 1 Daniell's Chan. Prac. p. 837; Gressley's Equity Evidence, p. 8, *et seq.; Barrett v. Sergeant*, 18 Vt. 365.

2. As against Josiah Morris & Co., appellee can not claim that there was any usury in the debt, or that it was at the time less than $6,300.—*Perdue v. Brooks*, 85 Ala. 459; *Palmer v. Severance*, 8 Ala. 53; *Gee v. Bacon*, 9 Ala. 699; *Jackson v. Henry*, 10 John. Mar. p. 186; *Lee v. Kirkpatrick*, 14 N. J. Eq. 264; *Mayer v. Ramsey*, 46 Tex. 371; *The Middleton Bk. v Jerome*, 18 Conn. 443; *Watson v. McLaren*, 19 Wend. 557; *Petrie v. Feeter*, 21 Wend. 172; *McMillan v. Wemer*, 16 S. & R. 18.

3. Under the facts shown by the evidence introduced in this case, the mortgages would stand as security for the advance made by Morris & Co., although the debt to Lehman, Durr & Co., for which the mortgages were given to secure, was paid.—*Scott v. Sadler*, 52 Penn. St. 211; *Kellog v. Ames*, 41 N. Y. 259; *Grissler v. Powers*, 81 N. Y. 57; *Sherrill v. Sherrill*, 73 N. C. 8; *Wilber v. Goodrich*, 34 Mich. 84; *Goulding v. Bunster*, 9 Wis. 513; *Hall v. Southwick*, 27 Minn. 234; *Bolles v. Wade*, 3 Green Ch. 458; *Hoy v. Bramhall*, 19 *Ib.* 74, 563.

G. L. COMER and H. D. CLAYTON, *contra.*—1. Appellee, having paid the debt which was covered by the notes and mortgages, extinguished the debt, and thereby satisfied the notes and mortgages.—1 Jones on Mortgages, § 974. 2. Morris & Co. are not *bona fide* purchasers, there being usury in the mortgages.—*Smith v. Lehman*, 85 Ala. 394; *McCall v. Rod-*

[Morris & Co. v. Alston.]

gers, 77 Ala. 349; LeGrand v. Bank, 81 Ala. 123; Wiles v.
Couch, 75 Ala. 134; Saltmarsh v. Tuthill, 13 Ala. 390;
Harman v. Lehman, 85 Ala. 379; Woolsey v. Jones, 84 Ala.
88; Dozier v. Mitchell, 65 Ala. 511; Uhlfelder v. Carter,
64 Ala. 527.  3. The debt to Morris & Co. is entirely a new
debt, of a different amount, contracted at another time, and
due at a different time to another party; and, therefore the
mortgages can not be transferred as security for this new debt.
Waits A. & D. Vol. 4, p. 539, Sec. 9; Beardsley v. Tuttle,
11 Wis. 74; Clark v. Onam, 15 Gray (Mass.), 521; Ayres v.
Wattson, 57 Penn. St., 360; Grafton Bank v. Foster, 11 Gray
(Mass.), 265; Marcus v. Robinson, 76 Ala. 550; Tucker v.
Alger, 30 Mich. 67; Bacon v. Cottrell, 13 Minn. 194.

WALKER, J.—On January 19th, 1889, according to the
claim of Lehman, Durr & Co., there was due on Alston's
account, which was secured by his mortgages, $6,572.70.  On
that day Mr. Alston, in company with Mr. Goetter, a member
of the firm of Lehman, Durr & Co., went to the banking house
of Josiah Morris & Co., and executed his note to them for the
sum of $6,875, receiving their check for that amount.  He
immediately took the check to the house of Lehman, Durr &
Co., delivered it to them, and thereupon they gave him a re-
ceipt in full of his account and paid him in money the differ-
ence between the amount of the check and the amount of the
account.  On the face of this transaction it operated as an
absolute payment and discharge of the claim of Lehman, Durr
& Co., against Alston and the creation of a new and independ-
ent liability on his part to Josiah Morris & Co.  It appears,
however, from the pleadings and the proof in the case, that
the parties have not regarded or treated the transaction as hav-
ing that effect.  When Mr. Alston accepted the receipt of his
account, he did not ask for the mortgages or demand their can-
cellation, as, it is to be supposed, he would have done if he had
understood that by the delivery of the check he had fully paid
and satisfied the claim of Lehman, Durr & Co.  In the letters
written by him to Josiah Morris & Co. within a few days after
the transaction the expressions used by him are not reconcil-
able with the existence of an understanding on his part that
the mortgage indebtedness had been extinguished by the trans-
fer of the check.  And, finally, such claim could not be made
by him under the averments of his bill in this case.  The bill
makes no mention of said check of Josiah Morris & Co.  From
the detailed statement of the usurious elements in the claim of
Lehman, Durr & Co., and from the averment that the notes
and mortgages have been paid after deducting the usurious

[Morris & Co. v. Alston.]

charges, it is plain, especially in view of the fact that the matter of the check was wholly ignored, that it was the intention of the pleader to rely, for support in his contention that all that was legally secured by the mortgages had been fully paid, upon his payments made on the account in previous years and upon the rejection of charges which represented the usury in the transactions. Having alleged that the payment was made in a particular manner, complainant's bill could not be supported by proof of payment in another and wholly different mode. There are no allegations to correspond with such proof. The state of his pleadings precludes Mr. Alston from claiming in this suit that he paid off the debt to Lehman, Durr & Co. by the transfer of the check to them.— *Gilmer v. Wallace,* 75 Ala. 220. The acts of the defendants, on the other hand, are equally inconsistent with any claim they may now make that the debts to Lehman, Durr & Co. were really paid off and discharged, or that the security of the mortgages was transferred to a new and independent debt to Josiah Morris & Co. Lehman, Durr & Co. could not have regarded the transaction as having the effect of a payment of the mortgage debt; for, after giving the receipt, they transferred the mortgages as subsisting obligations to Morris & Co. having assured them of the sufficiency of the security. Morris & Co. accepted the mortgages on this assurance without demanding other security and without any inquiry at all as to the solvency of Mr. Alston, with whom they were wholly unacquainted up to that day. It is plain from this that they did not understand that the mortgages had been discharged by the payment of the debt secured thereby. The absence of such understanding on their part is conclusively shown by their proceedings to foreclose the mortgages. Nor does it appear that the transaction can be treated as having effect to discharge the mortgages, so far as the debt to Lehman, Durr & Co. was concerned, and yet to keep them alive as security for a new and independent debt to Morris & Co. In the first place, Morris & Co. did not understand the transaction to have this effect. This is shown by their efforts to get Alston to execute a new mortgage to secure his note to them. If that note was already secured by the mortgages transferred by Lehman, Durr & Co. there was no need of a new mortgage upon the same property and to secure the same indebtedness. Furthermore, the contention that the note to Morris & Co. was secured by the old mortgages involves the proposition that by a parol agreement a mortgage may be so altered in its operation as to stand as security for a new debt, different in character and amount from that mentioned in the instrument, payable at a different

time and to another person.   We do not think that this is per-
missible, especially in view of the fact that the conduct of the
party who now makes the claim evidenced a different under-
standing, and in the absence of clear proof of any expressions
by the parties of an intention to make such a complete substi-
tution.— *Tucker v. Alger*, 30 Mich. 67; *Wilhemi v. Leonard*,
13 Iowa, 330; Jones on Mortgages, § 355.   Indeed, there are
several circumstances which much more indicate that the
transaction was a mere temporary expedient arranged by Leh-
man, Durr & Co., than that it was intended to work such
a complete change of relations as it is now contended
was effected thereby.   From Alston's letters written to the
defendants within a few days after the transaction, it appears
that he understood it as an arrangement made between the
defendants, that he did not at the time know of the transfer of
the mortgages, and that he expected Lehman, Durr & Co. to
extend his indebtedness and make him further advances on his
executing to them a new mortgage.   That he may have relied
on such understanding, although he was informed that matters
would not be definitely determined until Mr. Lehman should
come, is indicated by the fact that on the day of the transac-
tion and as a part thereof, according to his testimony, he re-
ceived from Lehman, Durr & Co. a new mortgage covering the
amounts of the check and of the advances desired for the com-
ing year, to be taken home and executed by himself and wife.
The fact that this mortgage described the same property as
that described in the mortgages transferred to Morris & Co.
strongly indicates a purpose on the part of Lehman, Durr &
Co. to pay off Morris & Co. as part of the consideration for
the new mortgage.   Morris & Co. evidently did not expect
Alston to pay the note executed by him at its maturity in less
than two weeks from its date.   It is probable that Mr. Billing
would have examined the mortgages or made some inquiry to
ascertain what was secured thereby if he had expected to get
some stranger to them to take them up.   His carelessness in
this regard suggests that he relied on Lehman, Durr & Co. tak-
ing back the mortgages as soon as Mr. Lehman should come
and the matters of that firm be adjusted.   His conduct and
his testimony are well calculated to convey the impression
that this was really his expectation.   Whether such was the
fact or not it is unnecessary to determine.   But the circum-
stances which have been referred to, when viewed in the light
of the manifest understanding of all the parties that Lehman,
Durr & Co. should receive the amount of their claim from the
check of Alston, through whom the payment was made really
to them, and in the light of the distinct understanding between

Morris & Co. and Lehman, Durr & Co. that the latter should transfer the mortgages as subsisting securities, convince us that the transaction did not, as indicated by the form of a part of it, operate to extinguish the debt secured by the mortgages, and to create a new indebtedness; and that the intentions of the two defendant firms in their dealings with each other in this matter can be carried out only by treating the entire transaction as merely affecting a transfer by Lehman, Durr & Co. of their debt and the mortgages securing the same. Equity will not suffer mere appearances and external forms to conceal the true purposes, objects and consequences of a transaction. 1 Pomeroy's Eq. Jur., § 378, *et seq.* It is but a recognition of the real relations of the parties, and a furtherance of the purposes sought to be accomplished, to hold that the result of the transaction, so far as concerns the relations of Morris & Co. to the mortgages, was to preserve the life of the mortgages ·and of the debts secured thereby, changed only in ʻthe fact that Morris & Co. were substituted as the holders thereof in the stead of Lehman, Durr & Co.—*Kierson v. Baldwin*, 62 Ala. 526; *McGuire v. Van Pelt*, 55 Ala. 344; *Boyd v. Beck*, 29 Ala. 712; *Hall v. Southwick*, 27 Minn. 234; 3 Pomeroy's Eq. Jur., § 1211.

Treating the transaction as a mere assignment of their claim and mortgages by Lehman, Durr & Co., the matter next to be ·considered is the contention of Morris & Co. that there is an ·estoppel in their favor against Alston to preclude him from setting up usury in order to reduce or extinguish the debt in their hands. Morris & Co. arranged with Mr. Goetter to take the mortgages before they had ever seen Mr. Alston. Alston ˙says he did not know what papers were in the package handed ·by Mr. Goetter to Mr. Billing, and that he knew nothing of the transfer of the mortgages. Mr. Billing does not remember that Mr. Alston said anything about those papers at all. He ·said nothing to him about the transfer of the mortgages and ·asked him no questions about his indebtedness to Lehman, Durr & Co. It does not appear from Mr. Billing's version of the interview at which Mr. Alston was present, that the nature of the transaction of the bank with Lehman, Durr & Co. was made ·known to Mr. Alston or that he did or said anything indicating a purpose on his part to mislead or to deceive. The talking, or most of it, at any rate, was done by Mr. Goetter and Mr. Billing. It does not satisfactorily appear by a preponderance of the evidence that Mr. Alston knew what was the arrangement made by Mr. Goetter with Lehman, Durr & Co., or that it was brought to his knowledge that the mortgages against him were to be transferred to Morris & Co.,

or that it was intended that they should thereafter operate to secure the note then executed. Furthermore, it affirmatively appears from Mr. Billing's testimony that he was not relying on what Mr. Alston should say or fail to say. He asked him no questions, sought no information from and had no conversation with him as to the nature of the transaction. He says that he took the papers upon Mr. Goetter's assurance that they were all right. In several particulars the proof falls short of what is requisite to the creation of an estoppel. The burden of proof is upon the party claiming the benefit of the estoppel; and as estoppels may operate to exclude the truth they must be certain to every intent for no one should be denied the right of setting up the truth, unless it is in plain contradiction to his former allegations or conduct.—*Miller v. Hampton*, 37 Ala. 342. The object of the law in enforcing estoppels is to prevent fraud on the parties invoking them. A person who is fully aware of the nature of a transaction between others may not intentionally conceal his interest in the matter dealt with so as to mislead a stranger. On the other hand, if the transaction is not clearly disclosed to him when his known relations thereto would naturally suggest the imparting of such information to him, when the parties wholly refrain from considering him in the matter and make it plain that they are not relying on anything he may say or do, then his mere presence can not have the effect of entrapping him into an estoppel when he was not conscious of the existence of any fact putting upon him the duty to speak. It does not sufficiently appear in this case that Mr. Alston had that knowledge without which an estoppel based on his silence would operate as a fraud on him rather than for the just protection of Morris & Co. It was incumbent on Morris & Co. to make a satisfactory showing by the preponderance of the evidence that Mr. Alston was so informed of the character of the transaction in reference to the transfer of mortgages that his failure to mention the usury affecting them could be regarded as willful or as incompatible with innocence of intention on his part. Mere silence, without these features evidencing a fraudulent purpose, does not have effect to raise an estoppel.—*Steele v. Adams*, 21 Ala. 534; *Walls v. Grigsby*, 42 Ala. 473. The fact, clearly appearing from the testimony of Mr. Billing, that he relied wholly on Mr. Goetter's assurances and not at all on what Mr. Alston said or did not say, is another and conclusive reason for rejecting the claim to an estoppel. If he was misled by any one, it was by Mr. Goetter, in whom alone confidence was placed, and who knew of the usury in the debts assigned. An essential element of estoppel by conduct is that the party in-

voking it must have 'been induced to act upon the representation or concealment. In the present case Alston's conduct or silence were neither looked to nor relied on. Morris & Co. ignored him and relied on Lehman, Durr & Co. alone. The claim that they were induced to accept the transfer by anything said or done by Alston is refuted by the testimony of Mr. Billing. The estoppel can not result from conduct which was not relied on at all.—*Leinkauff & Strauss v. Munter*, 76 Ala. 194; *Brewer v. Brewer*, 19 Ala. 481.

It does not appear from the testimony that at at the time Alston executed the note to Morris & Co., it was contemplated that he should give a new mortgage to secure it. If, from the attempt of Morris & Co. to get a new mortgage and from other circumstances in proof, it could be inferred that Morris & Co. gave the check to be applied in paying off the old mortgages with the understanding that a new one was to be substituted in their place, then, on Alston's failure to give the new mortgage, the rights of Morris & Co. in reference to the old mortgages could be no greater than such as would be acquired by a subrogation to the position of Lehman, Durr & Co.—*Bolman v. Lohman*, 74 Ala. 507. As a subrogation is merely the substitution of one person in the place of another and giving him his rights, Morris & Co. would in that mode acquire only such rights as Lehman, Durr & Co. had. As to the interest of Morris & Co., the result would be practically the same as is reached by treating the transaction, so far as the mortgages are concerned, as a mere transfer thereof. It has been shown, that, on the evidence, the transaction is to be so treated in order to effectuate the substantial purposes of the parties. And, as Morris & Co. are insisting upon the foreclosure of the mortgages, they are to be regarded, in this proceeding, as not relying on the unsecured note, but as accepting their position as mere transferees of the mortgages. Occupying that position, and Alston not having estopped himself ·to set up the usury, the mortgage claim in their hands is subject to deductions to the extent as may be shown to be composed of usurious elements.—*McCollough v. Mitchell*, 64 Ala. 250; *Purdue v. Brooks Brothers*, 85 Ala. 459.

The decree of the Chancery Court determining the equities of the parties and ordering a reference to state the accounts is not inconsistent with the conclusions we have reached. We discover no error in it.

Affirmed.