(78 South. 797)

MOBILE TOWING & WRECKING CO. et al. v. FIRST NAT. BANK OF LAKELAND, FLA. (1 Div. 25.)

(Supreme Court of Alabama. April 18, 1918. Rehearing Denied May 30, 1918.)

1. CORPORATIONS  123(9)—LIENS ON STOCK —ISSUES.

In action against a corporation to fix a lien on stock standing in the name of one who had put it up as collateral, the corporation claiming a prior lien under Code 1907, § 3476, whether corporation was chargeable with a limited purpose for which the stockholder had received a transfer of the stock from another, who was not a party and was not complaining, was a matter in which complainant could have no interest.

2. CORPORATIONS  140—LIENS ON STOCK— INNOCENT PURCHASERS.

Under Code 1907, § 3476, giving a corporation a lien on stock for any debts due it by the person in whose name it stands, one is not an innocent purchaser of stock, as against a corporation, by reason of a letter from the corporation, stating that it had no claims against the stock, unless he shows that it was written at such time as induced action to his detriment.

3. EVIDENCE  75—PRESUMPTIONS.

Where a party could have prevailed by showing that a letter was written at a certain time other than the date thereof, and failed or neglected to do so, having the means and opportunity, it will be presumed that the letter was not written at such certain time, although it could not have been written when dated.

4. CORPORATIONS  426(8)—ACTS OF OFFICERS —RATIFICATION.

Silence of a corporation when a letter written by an officer was brought to its attention, as far as ratification was concerned, could not extend beyond the act itself.

5. CORPORATIONS  425(5)—ESTOPPEL  58 —PREJUDICE.

Failure of corporation to protest when a bank called to its attention the fact that it was holding stock as collateral, and that a corporate officer had informed it that the corporation had no claims against the stock, did not estop the corporation from claiming prior liens, where the bank was not lulled into nonaction nor prejudiced, and could not have enforced collection in any other method than it pursued in attempting to sell the stock; the debtor being insolvent. It is essential to an estoppel that one party has

<hr>

 For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

been induced by the declaration or conduct of another to act or desist from acting to his detriment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Estoppel.]

6. ESTOPPEL ⬥116—BURDEN OF PROOF.

The burden of proving an estoppel rests upon the party invoking it.

Appeal from Circuit Court, Mobile County; Claude A. Grayson, Judge.

Bill by the First National Bank of Lakeland, Fla., against the Mobile Towing & Wrecking Company, and Harry T. Hartwell, to fix a lien upon 60 shares of stock, and have same issued and delivered to complainant. Decree for complainant, and respondents appeal. Reversed and rendered.

The bill alleges that on April 13, 1915, defendant Harry Hartwell, having for some time been indebted to the bank, executed and delivered to the bank his certain promissory note for $6,250, dated as of that date and payable six months after date, and also indorsed and delivered to his bank the promissory note of one Arthur Bailey for the same amount, and of the same date, and payable six months after date to the order of the bank, and also delivered to orator certificate No. 40, for 60 shares of the capital stock of the Mobile Towing & Wrecking Company, as collateral security for said note, and that said stock so delivered stood on the books of the Mobile Towing & Wrecking Company, in the name of said Harry T. Hartwell, and that no part of said amount so secured and evidenced by said note has ever been paid by said Harry T. Hartwell to the bank, and that the said sum or $13,355.38, principal and interest, is now due from Hartwell to orator.

The second paragraph deals with the notice marked "Exhibit A," which is set out in the opinion, and alleges, further, that in October, 1915, the bank's attorneys notified the Mobile Towing & Wrecking Company in writing that "your orator held as collateral security to the notes above set out certificate No. 40, for 60 shares of the capital stock of respondent Mobile Towing & Wrecking Company."

The third paragraph sets up the notice and sale of the certificates of stock, and the purchase by defendant, and a demand upon the Mobile Towing & Wrecking Company to transfer to the bank on the books of the corporation the said shares of stock, and to issue in the bank's name a new certificate for said capital stock.

The fourth paragraph sets up the refusal of the Mobile Towing & Wrecking Company to issue said certificate, and to transfer said stock on the books of the company, and the assertion of a lien by the respondent on the shares of stock for a debt due it by said Harry T. Hartwell.

The fifth paragraph sets up that the Mobile Towing & Wrecking Company has given notice by publication that it will sell in June, 1916, the 60 shares of stock standing in the name of the said Harry T. Hartwell, and which was purchased by the bank at the said sale aforesaid, to satisfy an alleged indebtedness of said Hartwell to the Mobile Towing & Wrecking Company.

The sixth paragraph alleges that whatever right or lien said Mobile Towing & Wrecking Company may have on or to said stock, such right or lien is subordinate to the right of orator to said stock, and orator is entitled to have said stock transferred in its name upon the books of the Mobile Towing & Wrecking Company. Defendant answered and made his answer a cross-bill. It admits the ownership by Harry T. Hartwell of certificate No. 40 for 60 shares of the capital stock of respondent. It denies the indebtedness of Harry Hartwell to complainant, as evidenced by the note, and that the respondent corporation in writing advised the bank that it was in receipt of complainant's notice relative to said shares of stock, and that proper notification had been made on its books that such certificate had been given as collateral security for said note, and that there was no other pledge on the stock registered on the books of the company It admits that Hartwell was secretary of the respondent company, but denies that he has authority as such to make such communication in behalf of the company. It alleges that by reason of the relation of the transaction notice to Hartwell is not notice to defendant, and that the statement contained in Exhibit A that respondent corporation had no claim against the stock was false, and that said Hartwell had no power or authority, individually or as secretary of the company, to bind it by such papers; for in truth and in fact said Hartwell on said date was indebted to respondent corporation in the sum of more than $40,000, and has ever since been so indebted to this defendant, and this defendant had a lien upon the stock for the payment of such indebtedness. It neither admits nor denies the allegations of the third paragraph, except that it admits a demand by complainant to have the certificate of stock issued to complainant. It admits the allegations of the fourth paragraph. It admits the allegations of the fifth paragraph, and further alleges the sale thereof. It denies that its lien is subordinate to the claim set up by defendant, and denies that complainant is entitled to have said stock transferred in its name upon the books of the Mobile Towing & Wrecking Company. It is then alleged that on March 16, 1914, said Hartwell was indebted to respondent in a sum exceeding $40,000, and said indebtedness is still due and unpaid on April 13, 1915, and has ever since remained due and unpaid, except for the partial payment thereof that has been affected by the sale of the stock standing in his name on the books of the Mobile Towing

& Wrecking Company, as hereinafter shown. Said Hartwell owned and there stood in his name on the books of the respondent corporation 199 shares of the capital stock of the Mobile Towing & Wrecking Company, and the value of the entire stock that so stood upon the books of respondent in the name of said Hartwell was much less than the amount of his indebtedness to it. On May 23, 1916, this respondent demanded payment of said indebtedness of said Hartwell, and notified him that said stock would be sold at public outcry on June 26, 1916, for the enforcement of the lien of said respondent thereon. In the meantime said Hartwell paid no part of said indebtedness, and that this respondent, on June 26, 1916, sold said 199 shares of stock, including the 60 shares owned by complainant, at public auction to the highest bidder (here follows the notice), and at such sale this defendant was the highest bidder, and became the purchaser of said stock and is the lawful owner thereof.

Gregory L. & H. H. Smith, of Mobile, for appellants. Inge & Kilborn, of Mobile, for appellee.

ANDERSON, C. J. [1] Certain stock originally belonged to Guy Hartwell, who delivered it to Harry T. Hartwell indorsed in blank, and which was surrendered and cancelled and new stock was regularly issued in lieu thereof in the name of and to Harry T. Hartwell, and who became the legal holder of same and was liable to the corporation for any debts due it by the said Harry T. Hartwell under the terms of section 3476 of the Code of 1907. As to whether or not the respondent corporation was chargeable with the limited purpose for which the stock could be used when delivered by Guy Hartwell to Harry T. Hartwell matters not, as Guy Hartwell is no party to this cause and is not complaining, and the complainant bank is not claiming under any transfer or assignment of the stock held by Guy Hartwell, but as the assignee of the stock issued to Harry T. Hartwell and hypothecated with it as collateral security by said Harry T. Hartwell. If, therefore, Guy Hartwell had a secret equity in the stock that is a matter between him and the defendant corporation, and is a question not involved in this suit, and which will not be concluded by a decree settling same, as the said Guy Hartwell is not a party, and, as above noted, the complainant bank does not claim as assignee of stock owned by him, but as the assignee of the stock that was issued to Harry T. Hartwell. When the stock was issued to Harry T. Hartwell, the respondent's lien automatically attached to same, under the terms of the statute, for any debts due it, and a subsequent transfer of same by the legal owner, Harry T. Hartwell, to the complainant bank was subject to the said statutory lien of the respondent corporation. The complainant seems to have realized this statutory right of the corporation by attempting to show an inquiry as to whether or not there was a claim against the stock, and relies upon a letter marked "Exhibit A" and dated March 16, 1914, to it as an estoppel against any lien by the said respondent superior to its claim, and which said letter reads as follows:

"March 16, 1914.

"To First National Bank of Lakeland, Fla. Lakeland, Fla.—Gentlemen: Your notice advising us that you hold as collateral security for debt, certificate No. 40 for sixty shares of capital stock of Mobile Towing & Wrecking Company of Mobile, Alabama, standing in the name of Harry T. Hartwell is received, and proper notification has been made on our books. The Mobile Towing & Wrecking Company has no claim against this stock and no other pledge on this stock is registered on the books of this corporation.

"Yours truly,

"Mobile Towing & Wrecking Company,

"By Harry T. Hartwell, Secretary."

[2, 3] It may be conceded, though a question we do not decide, that, notwithstanding it related to a personal transaction of Harry T. Hartwell, it was written by him in his official capacity, and was binding upon the corporation, yet it did not necessarily constitute the complainant bank an innocent purchaser by estopping the respondent from claiming a lien upon the stock. In the first place, the letter would indicate that the complainant bank acquired the stock and extended the credit or forbearance, before making inquiry and receiving the letter above set forth. On the other hand, while the letter purports to have been written March 16, 1914, and describes certificate No. 40 standing in the name of Harry T. Hartwell, there was no such a certificate issued at that time, as the undisputed evidence shows that the certificate in question was not issued for some time thereafter. If, therefore, the letter was in fact written on the 16th of March, 1914, and was in response to an inquiry and statement by the complainant that it held a certificate for shares of stock, it must have referred to stock other than certificate No. 40, which was not issued before April 18, 1914. It is evident, however, that said letter was written subsequent to the issuance of certificate No. 40 for 60 shares of stock to Harry T. Hartwell, as it refers to said particular certificate, but we are not informed just when the complainant received said letter. The agreed statement of facts shows that it was delivered, but just when we are not informed, and from aught that appears it may have been delivered after the complainant became a purchaser of the stock. In other words, it was incumbent upon the complainant to show that it acted upon the letter to its detriment. If, as above stated, the letter was written and delivered as of March 16, 1914, it did not relate to the stock in question, which was not issued for over a month thereafter, and which was not hypothecated with the bank until May 14, 1914, and which did not undertake to inform the bank of Hartwell's standing with

the respondent corporation at the time he owned the said stock and transferred it to said bank as collateral security. If the letter was of a subsequent date, it was incumbent upon the bank to show that it was written and received by it at such time as induced action to its detriment. If the letter had been written and delivered prior to the loan the bank made, or the extension, the bank alone had the ability to establish that fact, as the agreement of facts authorized either party to introduce additional proof, and it must be presumed that the bank's reasons for not showing just when it received said letter is that such proof would not be beneficial to it. "When a party, having the means and opportunity to prove a fact, fails or neglects to offer evidence of it, the presumption is fair and just that it does not exist." Roney v. Moss, 74 Ala. 390; Wood v. Holly Mfg. Co., 100 Ala. 326, 13 South. 948, 46 Am. St. Rep. 56.

[4-6] It is, of course, well settled that a corporation can ratify the act of an agent ultra vires his authority if not ultra vires the corporation, and this may be done in certain instances by a silent acquiescence as well as by affirmative action, and it is suggested that the failure of the respondent corporation to reply to the letter of complainant's counsel of October 30, 1915, wherein a clause of the letter purporting to be written by Harry T. Hartwell of March 16, 1914, was quoted, operated as a ratification of said letter or as a subsequent estoppel against the respondent from setting up a superior claim to the shares of stock. The ratification of an act could hardly extend beyond the act itself; and, as above noted, the proof does not show that the letter of Hartwell as secretary induced the respondent bank to acquire or accept the stock when turned over to it in May, 1914, and did not then inform it that the respondent corporation had no lien or claim upon same when acquired by the complainant. As to an estoppel for a failure to answer, or protest, upon receipt of the letter written by respondent's counsel on October 30, 1915, there is nothing in the record to show that complainant was thereby prejudiced. It was not lulled into nonaction as it brought suit and prosecuted the same to judgment without delay or hindrance. It is essential to an estoppel that one party has been induced by the declaration or conduct of another to act or desist from acting to his detriment. Pounds v. Richards, 21 Ala. 424; Leinkauff v. Munter, 76 Ala. 194; Jones v. McPhillips, 82 Ala. 102, 2 South. 468. The burden of proving an estoppel rests upon the party invoking it. Crosthwaite v. Lebus, 146 Ala. 525, 41 South. 853; Wilkinson v. Searcy, 74 Ala. 243; Morris v. Alston, 92 Ala. 502, 9 South. 315. The complainant bank has failed to prove that it suffered any detriment by respondent's failure to notice the letter of October 30, 1915. It is suggested in brief of counsel that it might

have resorted to other methods of enforcing the collection of its debt such as an attachment or petition in bankruptcy, etc., instead of by an ordinary suit and judgment, but the proof does not indicate that the chance to collect the debt would have been enhanced by said other methods. Indeed, the proof shows that Harry T. Hartwell was insolvent, and had no property subject to execution, and it was incumbent upon complainant to show that but for the conduct of the respondent with reference to the letter of October 30, 1915, it could have realized upon its claim otherwise than by the method pursued, as the method adopted was in no wise hindered, delayed, or interfered with by the conduct of the respondent.

We do not overlook the statement in the agreed facts that the complainant bank did not know of Harry T. Hartwell's indebtedness to the respondent corporation until long after it acquired the stock in question, but this does not suffice to constitute it an innocent purchaser as against the statutory lien of the corporation upon the stock. It was incumbent upon the complainant bank to ascertain, before acquiring the stock, whether or not the respondent corporation had a lien upon same; and, as above demonstrated, there is nothing in this record to show that the bank was informed or led to believe by the respondent or any one else that it had no claim upon the stock at the time the said bank acquired same on the 14th day of May, 1914.

The trial court erred in granting complainant relief and in denying the respondent relief upon its cross-bill and the decree is reversed, and one is here rendered, denying relief upon the original bill and awarding the relief prayed for in the cross-bill.

Reversed and rendered.

MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur.