234

81 So.2d 903

**O. E. KINNEY, Deputy Sheriff, and United States Fidelity & Guaranty Co.,**

**v.**

**Evelyn LA FRANGE.**

**6 Div. 844.**

Court of Appeals of Alabama.

Aug. 9, 1955.

Sirote, Permutt, Friend & Friedman, Birmingham, for appellee.

McGowen & McGowen and Geo. I. Case, Jr., Birmingham, for appellants.

PRICE, Judge.

This action was brought by the appellee against the appellants to recover damages for the wrongful taking of a 1949 International Motor Truck, allegedly the property of the appellee. The case was tried by the court, sitting without a jury and judgment was rendered for plaintiff in the amount of $850. Defendant appeals.

On September 24, 1951, judgment was rendered in the Circuit Court of the Tenth Judicial Circuit of Alabama in favor of The Coral Sandstone Company, a Tennessee concern, against Joe LaFrange, in a suit instituted August 16, 1951. Execution was issued on the judgment, and the truck, the subject of this suit, was levied on by O. E. Kinney, Deputy Sheriff of Jefferson County. The truck was sold at public auction, at which time plaintiff's attorney appeared, objected to the sale and announced to those present that plaintiff claimed title and right to the truck.

The testimony tends to show that the truck was purchased by the plaintiff in her own name on August 7, 1948. The purchase price was paid by check drawn on plaintiff's private bank account. At that time the plaintiff and her husband, Joe LaFrange, were living on a 4½ acre farm on Route No. 5 in Jefferson County. This property had been purchased by the plaintiff with funds which she had received from the sale of another house owned by her in Crestline. Plaintiff mortgaged the house on Route 5 to pay for the truck. The license plates were issued in plaintiff's name and paid for with her money. On January 23, 1950, plaintiff borrowed money from a local bank, using the truck as security.

Plaintiff testified that she used the truck for her personal needs and to haul feed for her stock, sawdust for her roses and for putting up fences and repairing her house; that she allowed her husband, Joe LaFrange, to use the truck when he needed it; that he used it occasionally in connection with his landscaping and concrete work; that she had no written agreement with her husband concerning his use of the truck; that she used it more than he did.

Joe LaFrange testified the truck was purchased by plaintiff with her own money; that he sometimes used the truck in his business of general contracting and landscaping; that while he purchased the license plates for the truck, he did so with his wife's money and in her name; that he leased a similar truck for several months to use in his normal line of work.

It appears from the testimony that in 1948 when the truck was purchased plaintiff also had in her own name a Bantam automobile and a "beat-up International dump-truck." In 1949 she purchased a Chevrolet car. Plaintiff testified that Joe LaFrange occasionally used the dump truck in his landscaping work.

Several months after the truck in question was purchased Joe LaFrange had the words, "Joe La Frange, Contractor, Landscape Service, Asphalt and Concrete Driveways, Phone 59–2010, Route 5, Bir-mingham, Alabama," painted in two-inch high letters on both doors of the truck. Plaintiff and LaFrange both testified that this was done without the knowledge or consent of the plaintiff. Plaintiff testified "I raised cain about it, and he said the only way I could get it off was to repaint the truck." The signs remained on the truck until the execution sale. Plaintiff stated she did not remove the signs because she did not want to go to the expense of repainting the truck.

In April, 1950, LaFrange, accompanied by the plaintiff, drove the truck to Tennessee to transact business with the Coral Sandstone Company. Plaintiff testified that at that time LaFrange's signs were not on the truck. B. M. Cole, an officer of the Coral Sandstone Company, testified that at that time he negotiated with LaFrange for the sale of pipe and other merchandise; that they had had previous business transactions; that during their negotiations in April he had occasion to see the truck for the first time; that he rode in it; that Joe LaFrange was driving the truck and it had the markings, "Joe LaFrange, Landscape Contractor," and phone number, and route number," on the doors; that he observed contractor's tools in the bed of the truck and a pouch or case appended to the inside of the cab which contained "my correspondence to him and the company's correspondence, and notations, and other literature pertaining to how he was handling the stone business with me."

In August, 1950, plaintiff and Joe LaFrange separated because of LaFrange's failure to provide funds for the support of the plaintiff and her child. This separation continued past January, 1951. During this time the truck remained in plaintiff's possession and was used occasionally by Joe LaFrange.

As before stated, levy was made on the truck by Deputy Sheriff Kinney on November 23, 1951, under execution issued in the case of Coral Sandstone Company versus Joe LaFrange.

Plaintiff testified that the day of the levy she drove the truck to a neighbor's house

two blocks from her home; that she parked it in the driveway and went for a walk in the woods; that when she returned the truck was gone.

Defendant Kinney testified he levied on the truck, which he found in some one's driveway in Roebuck; that Joe LaFrange drove up in an automobile at the time of the levy and told him the truck belonged to plaintiff; that LaFrange gave him the keys to the truck to avoid having it towed by a wrecker; that plaintiff was not present at the levy.

Deputy Sheriff Adams testified he was present when the levy was made; that the truck was found on route 5, two or three blocks from the LaFrange home; that LaFrange's signs were on both doors and the truck bed was loaded with tools; that LaFrange removed some of the tools from the truck and gave him the keys; that a neighbor told defendant Kinney Mrs. La Frange had driven the truck there and that it had been there for several days.

Joe LaFrange testified the keys he delivered to the deputy were taken by him from the glove compartment of the truck; that the truck was his wife's property; that the only thing he took from the truck was his brief case.

Appellant advances the argument that as to the execution creditor title to the truck was either vested in Joe LaFrange, or was held in trust for his use and benefit by Evelyn LaFrange.

The first contention is that by the provisions of Sec. 127 of Tit. 47, Code, title passed from plaintiff and vested absolutely in Joe LaFrange, thus subjecting the truck to the satisfaction of his debts. Section 127 of Tit. 47, provides:

"All loans of personal property, not in writing, vest an absolute estate in the person in possession under such loan, as to purchasers and creditors of such person, after three years from the commencement of such loan, unless within that time the lender commence an action at law, in good faith, for the recovery of the property."

We think the evidence does not show such a loan of personal property as is contemplated by section 127, supra, but regardless of whether the record shows such a loan by plaintiff to her husband, appellant's position cannot be sustained on that theory.

The record shows that the plaintiff purchased the truck in August 1948. Some time prior to August 16, 1951, when suit was instituted against Joe LaFrange, he became indebted to the Coral Sandstone Company. The exact date that the debt was contracted is not in evidence, although it appears that LaFrange became indebted to the company on April 12, 1950, or some time prior thereto.

In Mathis v. Thurman, 143 Ala. 558, 39 So. 360, 361, the Supreme Court in considering Section 1013, Code 1896, (now Sec. 127), held:

"In order, however, for the plaintiff to have a title superior to that of the original owner, he must hold under a purchaser or a creditor who purchased the property or gave credit to the person in possession three years after the commencement of the loan, as said section does not apply to creditors anterior to the loan or the expiration of three years from the commencement thereof. Carew v. Love, 30 Ala. 577; Durden v. McWilliams, 31 Ala. 206."

In Carew v. Love, supra, it was declared:

"To entitle the creditor of the title of the lender, by a sale under legal loanee, under the statute, to divest the process against the loanee, it is essential that the credit be given, or the liability contracted, after the completion of three years from the commencement of the loan. Creditors who claim, under the statute, to subject one man's property to the payment of another man's debts, must bring themselves strictly within the statute. The statute in question does not confer that extraordinary privilege on all

classes of creditors of a loanee, but only on that class in whose favor a debt or liability was contracted after the loan had continued for at least three years; and a sale under legal process against the loan, for a debt contracted before the loan has continued for three years, does not, by virtue of the statute, divest the title of the lender."

If Coral Sandstone Company became a creditor of Joe LaFrange after the completion of three years from the commencement of the loan, (if there was a loan) the burden was upon the defendant to prove such fact in order to bring himself within the protection of the statute. Mathis v. Thurman, supra, and this he has failed to do.

Sections 125 and 126 of Tit. 47 have no application here. There is no evidence of a conveyance of personal property in consideration of marriage as contemplated by Section 125, nor a loan in writing as contemplated by section 126.

Appellants contend further that by allowing Joe LaFrange to hold himself out as the owner of the truck, plaintiff is estopped from denying ownership in La Frange. Appellants apparently rely on the following evidence in support of his theory of estoppel.

On April 12, 1950, Joe LaFrange and appellee drove the truck to Tennessee to transact business with the Coral Sandstone Company. B. M. Cole, an officer of that company, testified he observed LaFrange's signs on both doors. He further testified that he had never seen the truck before April 12, 1950, and that he had been doing business with LaFrange prior to the time he first saw the truck.

The burden of proving an estoppel rests upon the party invoking it. Mobile Towing & Wrecking Co. v. First National Bank, 201 Ala. 419, 78 So. 797. And an essential element of the doctrine of estoppel is that he who invokes it must have been misled to his detriment by the act or conduct of the party against whom he seeks to invoke it. Mobile Towing & Wrecking Co. v. First National Bank, supra; Huntsville Elks Club v. Garrity-Hahn Bldg. Co., 176 Ala. 128, 57 So. 750; Hattemer v. Davis, 206 Ala. 613, 91 So. 321; Martin v. Brown, 199 Ala. 134, 74 So. 241; Emerson–Brantingham Implement Co. v. Arrington, 216 Ala. 21, 112 So. 428; Russell v. Soper, 232 Ala. 194, 167 So. 261; First Nat. Bank of Mobile v. Burch, 237 Ala. 680, 188 So. 859.

If LaFrange's debt to the Coral Sandstone Company was contracted before April 12, 1950, then it cannot be successfully contended that it was made in reliance upon Joe LaFrange's supposed ownership of the truck because Mr. Cole testified he did not know of the truck before that date. If the debt was contracted on April 12, 1950, appellant has introduced no evidence tending to show that the company extended credit to LaFrange in reliance upon his ownership of the truck.

Appellants further contention is that the bill of sale conveying title to the truck to plaintiff was made in trust for the use and benefit of Joe LaFrange and is void as against LaFrange's judgment creditors. Sec. 1, Tit. 20, Code 1940.

The only evidence offered on the question of the ownership and use of the truck is that of the plaintiff and Joe La Frange. Both testified that plaintiff purchased the truck with her own money and that LaFrange used it only occasionally and with her consent. Appellant offered no testimony to contradict this evidence.

When a civil case is tried by the court without a jury the judgment of the trial court, rested on evidence given ore tenus, has the weight and effect of a jury verdict, and will not be disturbed, unless palpably wrong or against the great preponderance of the evidence. Collier v. Woody, 257 Ala. 391, 59 So.2d 670.

We are of the opinion that under the evidence here, the judgment of the trial court should be affirmed. It is so ordered.

Affirmed.