[Bank of Tupelo v. Thompson.]

# Bank of Tupelo *v.* Thompson.

## *Claim Suit.*

(Decided April 22, 1914. 65 South. 147.)

1. *Corporations; Pledge of Stock; Jury Question.*—Where the owner of corporate stock authorized a partnership to pledge it to a bank as security for a cotton margin, and there was evidence from which it could be inferred that the balance due the bank from such partnership was for a margin, the court could not properly direct a verdict for the plaintiff in an action to recover possession of the stock.

2. *Same; Endorsement in Blank.*—Where the owner of corporate stock endorsed it in blank and delivered it to a partnership to be pledged under certain conditions the partnership was given the indicia of authority to make any disposition of the stock, and a purchaser for value is not affected by the restrictions placed upon the authority of the holder of such stock of which it had no notice.

3. *Same; Purchaser for Value.*—One who accepts a pledge of corporate stock as security for an amount then due from the pledgor, is not a purchaser for value; but, if further credit is extended the pledgor on the security of the pledge, although it be not the sole security, the pledgee becomes a purchaser for value.

4. *Same; Jury Question.*—Where there was evidence that certain corporate stock was pledged with the bank as collateral or margin, and that such stock was held by the bank as a security for any indebtednes of the pledgor, it was for the jury to determine whether the evidence meant only the present indebtedness or a future indebtedness, as the language was susceptible of either meaning.

5. *Same; Evidence.*—Where stock had been pledged by a partnership to a bank, the owner of the stock being the wife of a member of the partnership, and the bank relied upon the authority to sell the stock given by the original pledgee, evidence that the husband of the owner of the stock, plaintiff in this case, had authorized his partner to tell the bank it might sell the stock, after the original pledge was made, was not admissible.

APPEAL from Birmingham City Court.

Heard before Hon. W. M. WALKER.

Action by Marion Louise Thompson against William D. Nesbitt, individually and as trustee, to recover certain shares of corporate stock and for the conversion of the stock. Defendant disclaimed any title to the stock, whereupon the Bank of Tupelo was substituted

[Bank of Tupelo v. Thompson.]

as defendant, and asserted its claim thereto.  Judgment for plaintiff, and the substituted defendant appeals.  Reversed and remanded.

ANDERSON & LONG, TILLMAN, BRADLEY & MORROW, and JOHN S. STONE, for appellant.  The method adopted and permitted by the court to prove the existence of the original of the transfer was improper.—*Torrey v. Burney,* 113 Ala. 496; *Home v. Widden,* 103 Ala. 203; *McCormick v. Joseph,* 83 Ala. 401.  Counsel discuss other assignments of error, but without further citation of authority.  The method of the enforcement of the pledge may be made by agreement of the parties.—31 Cyc. 863.  It was competent to show that Mr. Thompson consented to the manner in which Thompson and Wallace used Mrs. Thompson's stock.—*B'ham W. W. Co. v. Humes,* 121 Ala. 168; *Johnson v. Hume,* 138 Ala. 564.  Plaintiff was not entitled to the affirmative charge.—*Terry v. B'ham N. Bank,* 93 Ala. 595; *Sharpe v. Bank,* 87 Ala. 644; 21 Eng. Rul. Cas. 301; 31 Cyc. 341, et seq.  The name of the owner in the face of the stock is not sufficient to put a purchaser on notice as to the rights of the person so named.—*Morton v. N. O. & S. R. R. Co.,* 79 Ala. 617; *Winter v. Montgomery County,* 89 Ala. 550; *Nelson v. Owen,* 113 Ala. 372; 31 Cyc. 787; 10 Cyc. 64; *Warrior C. & C. Co. v. National Bank,* 53 South. 997.  It is immaterial what law governs the transaction, since the title to the securities passed unless the wife can show that she was deceived and defrauded by her husband with the knowledge and connivance of the pledgee.—*First N. Bank v. Nelson,* 106 Ala. 535; *Osborn v. Cooper,* 113 Ala. 405; *Brown's Case,* 103 Ala. 123; *Scott v. Taul,* 115 Ala. 529.

ALLEN & BELL, for appellee.  The controlling question is plaintiff's right to the property.  The other mat-

ters are incidental. Thompson and Wallace were guilty of a conversion of the stock.—*Hudmon v. DuBose*, 85 Ala. 446; *Mitchell v. Thomas*, 114 Ala. 459; 68 N. Y. 522; 17 Maine 562; 26 South. 918.· An unauthorized pledge of property is a conversion.—*People v. Huttig*, 1 Ala. App. 393; *Clay v. Sullivan*, 156 Ala. 392. The bank is not a bona fide holder for value.—*Moore v. Enslen*, 112 Ala. 228; *Bank v. Nelson*, 105 Ala. 180; *Vann v. Maybury*, 100 Ala. 438; *Loeb v. Flash*, 65 Ala. 526; *Loeb v. Peters*, 63 Ala. 43; *Fenoville v. Hamilton*, 35 Ala. 319; *Bank v. Sproull*, 105 Ala. 275.

ANDERSON, C. J.—There is no controversy over the fact that the plaintiff authorized the firm of Thompson & Wallace to use the warehouse stock as security for a "margin" to the bank for paying for cotton purchased by said firm. There was also evidence as to what the ·term "margin" meant, and which was to the effect that it meant to secure the bank against a shrinkage or diminution in the value of the cotton from the price paid and the price for which it was subsequently sold. There was evidence from which the jury could infer that the balance due the bank, at the time of the failure, was for "margin." In other words, there was proof from which the jury could infer that the difference between what was due the bank for paying for the cotton and the amount for which it was sold, or what it was worth at the time of the pretended sale to the Clark Grocery Company, was due to a depreciation in the value of the cotton, and that said difference was secured by the said warehouse stock. The trial court therefore erred in giving the general charge for the plaintiff although it might be conceded that the bank held the stock only to secure "margins."

As to the other theory of the case—that is, whether or not the bank held, or had the right to hold, the ware-

house stock as security for any indebtedness of the firm of Thompson & Wallace, other than for margin— was also a question for the jury. It may be true that the plaintiff delivered the stock for a limited purpose and was bound only by the exercise of the authority so given unless the bank was an innocent purchaser. She indorsed the warehouse stock in blank, which gave upon its face the indicia of authority to the holder to make any disposition of same, and the bank had the right, in dealing with the holder of said stock, to rely upon the authority given by the indorsement, unless put upon notice or inquiry by information gained other than by an inspection of the stock and the indorsement thereon.

The evidence both of Wallace and the cashier, Moore, shows that the bank did not have any notice of the restrictions of the plaintiff to Thompson & Wallace, or of their written obligation to her as to how the stock should be hypothecated. So the rights of the bank to hold said stock for any indebtedness, except for margin, depends upon whether or not it was a holder or purchaser for value, and upon this point there was such a conflict as to make it a jury question. If at the time the stock was hypothecated it was received as a mere security for what was then due the bank by the firm of Thompson & Wallace, and said indebtedness was not extended or no security released, the bank was not such a purchaser for value as to claim protection as against the plaintiff's restricted authority to Thompson & Wallace, notwithstanding she indorsed the stock in blank.—*Hawkins v. Damson & Abraham*, 182 Ala. 83, 62 South. 15; *First Nat Bank v. Nelson*, 105 Ala. 180, 16 South. 707; *Spira v. Hornthall*, 77 Ala. 137. On the other hand, if the stock was deposited as collateral security for any indebtedness due the bank from Thompson & Wallace, as well as for "margin," and any future

credit was given on the strength of said collateral, though it may not have been the sole security for making the advance, the bank would be a bona fide purchaser, whether anything was due for margin or not.

Wallace testified: "This stock was put up the second time as collateral or margins with the Bank of Tupelo about the 1st of October, 1910." Again he says: "I left this stock with Mr. Moore, the cashier of the Bank of Tupelo; we did owe the Bank of Tupelo something, and this stock was put up as collateral for that indebtedness." If the witness referred only to an existing indebtedness, and the stock was received as collateral for same, the bank was not a bona fide purchaser as for this consideration. The witness Moore said: "This stock was held by the Bank of Tupelo for any indebtednes that the firm of Thompson & Wallace owed the Bank of Tupelo." Whether or not the witness meant any indebtedness owing on the 4th of October or which might be owing during the cotton season was a question for the jury, as the language of the witness, when taken in connection with his other evidence, is susceptible of either meaning.

We think that the defendant must rely upon the right acquired in the stock upon the original hypothecation of same, and not upon the subsequent consent of Wallace-for it to sell the same and credit it to the indebtedness of Thompson & Wallace, after the failure of said firm, as this transaction would not constitute the bank a bona fide purchaser so as to protect it, under the authority to Wallace by virtue of the indorsement, and which was in violation of the limited authority given him by the plaintiff. Therefore there will be no error upon the next trial in declining to let Wallace testify that Thompson authorized him, after the failure, to tell the bank to dispose of the stock and credit the

proceeds to the account of the firm, unless it should appear that the stock was acquired by the wife in a jurisdiction giving the husband the common-law right to dispose of same. Whether or not the residence of the plaintiff was not sufficiently established when she received the stock from the warehouse company as to compel the application of the common law as to the control of the husband over same (*Birmingham Waterworks v. Hume,* 121 Ala. 168, 25 South. 806, 77 Am. St. Rep. 43) we need not now decide, as this case must be reversed for other reasons, and the residence of the plaintiff, when she acquired the stock, can be established upon the next trial.

The judgment of the city court is reversed, and the cause is remanded.

Reversed and remanded.

McCLELLAN, SAYRE, and DE GRAFFENRIED, JJ., concur.