# Mobile Temperance Hall Association v. Holmes, *et al.*

*Bill to Dissolve Corporation and to Distribute Trust Fund.*

(Decided May 21, 1914. Rehearing denied June 13, 1914. 65 South. 1020.)

1. *Corporations; Dissolution; Distribution of Assets.*—The assets of a corporation organized to promote temperance among its members, and the community, are, on dissolution of the corporation, distributed among the surviving members, as there is no statute on the subject, and the common law rule does not prevail.

2. *Same.*—Where a corporation which was organized to promote temperance and morality, forfeited its charter because the members abandoned the purposes of the corporation, the assets of the corporation will be distributed among those who were members up to the time of its dissolution, or their heirs.

3. *Same; Time.*—Under section 3515, Code 1907, a failure of the members of the corporation organized for the promotion of temperance and morality to hold meetings, or to do anything to further the purpose of the corporation, constitutes an abandonment of the corporate franchise, working a dissolution, and the dissolution must be held to have occurred at the time of the abandonment.

4. *Same; Action for Distribution.*—Where there were no officers of a dissolved corporation in existence who could sue for the distribution of assets of the corporation, a bill by heirs of former members who were entitled to participate in the distribution for a dissolution and distribution, is not rendered bad by a failure to allege a demand upon the corporate officers to institute the action.

5. *Appeal and Error; Presentation of Ground in Lower Court.*—Grounds of demurrer to a bill not assigned in the lower court cannot be assigned or considered on appeal.

6. *Same; Rehearing; Matters Considered.*—Error not assigned on the first submission of the cause on appeal, cannot be subsequently urged.

7. *Executors and Administrators; Necessity of Administration.*—Where a defendant had in its possession property belonging to a defunct corporation, and the complainants were entitled to participate in the distribution as heirs of the deceased member, their bill for that purpose is not defective because not alleging administration upon the estate of the deceased member; if there were no debts and the heirs were of age, none is necessary, and if there were debts and an administration was necessary, the court might provide for it in its decrees.

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by Mary E. Holmes and others, against the Mobile Temperance Hall Association for the distribution of assets of the defunct corporation. Decree for complainant and respondents appeal. Affirmed.

FREDERICK G. BROMBERG, for appellant.

PETER J. HAMILTON, for appellee.

GARDNER, J.—On February 29, 1848 (Acts 1847-48, p. 235), there was approved an act of the Legislature of Alabama which declared as bodies corporate the organizations known as the "Grand Division of the Order of the Sons of Temperance of the State of Alabama," and the subordinate divisions under its jurisdiction, by providing that the officers and members then existing, or who shall thereafter become members of such organizations, shall be declared to be bodies "politic and corporate in name and in deed—the Grand Division by the name and style of the 'Grand Division of the Order of the Sons of Temperance of the State of Alabama.' etc., * * * the subordinate divisions by their respective names and numbers, and by such names shall have perpetual succession of officers, and members," etc.

Such bodies corporate were given power to purchase, receive, retain, enjoy, and possess, lands, etc., not exceeding $20,000 in value, and to sell, exchange, or lease the same as said corporation may think proper. Also, to make such rules, orders, and by-laws, not repugnant to the laws of the state, as may be necessary, for the order, rule, good government, and management of the same.

[Mobile Temperance Hall Association v. Holmes, et al.]

There are some other provisions of the act, but they are unnecessary to be here stated. The act is made Exhibit A to the bill. It further appears from the averments of the bill that prior to February 29, 1848, certain citizens of Mobile had formed themselves into an association under the rules of the Order of the Sons of Temperance, the object of which was the cultivation of temperance and morality among themselves and the community; that said association was in full and regular communication with the Sons of Temperance of Alabama and with same order in United States, and had regularly accepted charters from said orders; that by virtue of the above-mentioned act said association (being a subordinate division of the order of the "Sons of Temperance of the State of Alabama") became a body corportate and was known as the "Star of Hope Division, No. 4, of the Sons of Temperance," was located in Mobile, Ala., and by that name and under that act has had a regular succession as such corporation. It also appears that the respondent Mobile Temperance Hall Association is likewise an Alabama corporation and that said Star of Hope Division No. 4, etc., because possessed of stock in said Temperance Hall Association, which was acquired altogether by contributions and payments by its members and from no other source. It is further alleged that said Star of Hope Division No. 4 was not a business corporation, did not have capital stock or issue shares, and that it was in the nature of an eleemosynary corporation for the benefit of its members.

The bill further shows that amongst the property of said association was a certain interest in the building known as Temperance Hall in Mobile, evidenced by 450

. shares of stock of the Temperance Hall Association, and that upon a sale of said building within the past few years the proceeds of said interest were set aside by said respondent association for the said Star of Hope Division No. 4, amounting to about $3,000, and the same is now on deposit in a bank to the credit or under the control of respondent Mobile Temperance Hall Association.

It is alleged that said Star of Hope Division No. 4 has permanently ceased its work and cannot be revived for lack of members, and that said assets constituted a trust fund for its last members or their representatives, and that said Mobile Temperance Hall Association declined to settled the trust on ground it does not certainly know who are the proper parties in interest.

In the third paragraph of the bill it is shown that said Star of Hope Division No. 4 was in full exercise of its rights and duties at least down to 1880; that on account of change of circumsances its membership was lessened by death, resignation, or otherwise, and that more than ten years before filing of the bill it ceased its meetings and the members ceased to take an active part in its work; that at that time, among the few remaining members was one James W. Holmes, and that the complainants to this bill, to wit, Mary E. Holmes and Caroline S. Donaldson, are the only representatives of said James W. Holmes; that the last officers of said association are dead and not enough members surviving to form a quorum to elect new officers or otherwise carry on any of the work of said corporation; that said corporation owes no debt. The bill seeks a distribution of this trust fund among those entitled thereto, the theory of complainant being that the same should be distributed among the last members, or their representatives, of said corporation.

The demurrer of the Mobile Temperance Hall Association, attacks the equity of the bill, and also that complainants show no interest in the fund and on other grounds.

There being no statute governing the distribution of the assets upon dissolution of a corporation such as we here have, it may be insisted that the common law, as stated often in the books, must control, and that under the common law, upon the dissolution or civil death of a corporation, all its real estate unsold reverts to grantor, the personal estate vests in the king, in this country in the people or state, and the debts due to and from the corporation totally extinguished. Such is stated to be the common law and was so stated in this state in cases of *Pashall v. Whitsett,* 11 Ala. 478, and *Saltmarsh v. P. & M. Bank,* 14 Ala. 675. It was so recognized in case of *Nelson v. Hubbard,* 96 Ala. 238, 11 South. 428, 17 L. R. A. 375; but it was there said that such was the effect at law when only legal rights were recognized, but that courts of equity regard a business corporation as holding the legal title to its property in trust for its stockholders and creditors. It thus appears that by this authority the common-law principle was recognized as modified by modern adjudications:

In the case of *Wilson v. Leary,* 120 N. C. 90, 26 S. E. 630, 38 L. R. A. 240, 58 Am. St. Rep. 778, the doctrine of the common law is repudiated, and the opinion quotes Chancellor Kent as saying, "This rule of the common law has, in fact, become obsolete and odious." The opinion proceeds: "But whatever the extent of this rule as the common law, if it was the rule at all it was not founded upon justice and reason, nor could it be approved by experience, and has been repudiated by modern courts."

In the case of *McAlthany v. Murray*, 89 S. C. 440, 71 S. E. 1025, 35 L. R. A. (N. S.) 895, Ann. Cas. 1913A, 1008, it is pointed out that the ancient authority relied upon as supporting the doctrine is a passage from Coke on Littleton, 13b, which passage is quoted therein. The opinion says that: "The language of Lord Coke makes it clear that the corporations which he had in mind were the religious orders and the municipal organization of the times. The land of the religious orders was usually acquired by gift, without valuable consideration; and it was not wholly unreasonable that upon dissolution of the order the land should revert to the grantor. Upon the dissolution of a municipal corporation, distribution of the land among the entire community would have been inconvenient, even if there had been recognition of the right of the individuals constituting a community to an interest in the land."

It is shown in the opinion that judicial discussion of this common-law doctrine has been concerning mainly business corporations, and some authorities attempt to make a distinction, holding the doctrine not applicable to business corporations, but that it may apply to one organized for charitable purposes. To that the opinion replied: "The difference that one kind of corporation issues shares of stock for the capital paid in, and is conducted for the purpose of making money for its shareholders, while the other receives and invests money in buildings and lands or other property for the special benefit of a class, or of the general public, and issues no stock, is no logical basis for holding that the rule of the common law has become obsolete and odious in one case, and not in the other. In rapidity of development, in variety of organization and of enterprise, the modern eleemosynary corporation has well-nigh kept pace with the modern business corporation. In its de-

[Mobile Temperance Hall Association v. Holmes, et al.]

velopment, it has reached a point entirely out of the view and conception of jurists of Lord Coke's day. * * * There is hardly any logical ground for rejecting the common-law rule of reversion, when considered with respect to business corporations, that does not apply with equal force, when considered with respect to eleemosynary corporations. * * * The true, modern rule, arising out of the development in importance and variety of corporate organizations and enterprises, and the principle which will be found running through nearly all modern judicial thought and expression, is that, on dissolution of any corporation, the corporate assets, both real and personal, including debts due to the corporation, should be regarded as belonging to a trust estate in the hands of those who happen to have their custody, to be disposed of by the court of equity according to the equitable rights of interested parties."

We have quoted somewhat at length from the above case for the reason that it is one directly in point. It concerned the title to property which belonged to a corportation known as St. George's Division, Sons of Temperance, the purposes being the same as the said Star of Hope Division, No. 4, and it is denominated as a benevolent and social corporation. That decision therefore holds that there is no reverter as to the real estate and the personalty does not vest in the state upon dissolution of the corporation. The opinion concludes: "The property was paid for and the building on it erected by the contributions of the St. George Division, Sons of Temperance, and there is no person before the court having any equitable claim, except those who were members of the order at the date of dissolution. It follows that such persons and their representatives are entitled to the property to the exclusion of the heirs of the grantor."

Many authorities are cited in the case criticising the common-law doctrine and repudiating the same, and there are also many cases cited in the notes thereto. As to whether the said doctrine can be held applicable to any kind of corporation, we need not at this time stop to inquire. If it can be said to have any application at this time to such a corporation as we have here under review, we agree with the above authority in repudiating the same. What is there said concerning the property of the benevolent and social corporation then under consideration is directly in point and applicable here to the assets of the Star of Hope Division, No. 4, and we follow the lead of that authority as decisive of this case. It is there held that the property belongs to those members or their representatives, who were members at the date of the dissolution. The corporation there had limited existence by its charter and the same had expired. There was no difficulty, therefore, in determining the date of dissolution. Here such is not the case. There was no limitation, and we must determine the question upon reason and such authorities as may be helpful.

In Bacon's Benefit Societies & Life Insurance, vol. 1, § 57, it is said: "Benefit societies, if incorporated, may be dissolved and ended by consent of the members. The existence of a voluntary association may also be terminated by implied abandonment because of failure to hold meetings for a protracted period. * * * Generally where the objects of an association have been abandoned or where it appears that the power to resume business does not exist, a legal dissolution will be decreed."

In the same work, section 49, it is said that the law often goes behind the artificial entity and deals with the corporation or members as an association of individuals.

[Mobile Temperance Hall Association v. Holmes, et al.]

In Niblack on Benefit Societies, § 128, it is said that: "Where the society is organized for purposes other than profit, there may be property belonging to it, derived from the payment of dues or fines, or consisting of the furniture of its rooms; but the possession of such property is a mere incident, and not the main purpose or object of the society. A member has no severable proprietary interest in it, and no right to any proportionate part of it, either during the continuance of his membership or upon his withdrawal. He has merely the enjoyment and use of it while he is a member, but the property remains with and belongs to the society, while it continues to exist, like a pew, the ultimate and dominant property in which is in the corporation or congregation, and not in the pew holder; and when the body ceases to exist, those who may then be members become entitled to their proportionate share of its assets."

In section 121 of the same work it is said that: "It is in the power of any association, whether incorporated or not, except such as are created for the administration of political or municipal authority, to dissolve itself by its own assent."

It is, of course, the general rule that there is no legal dissolution or forfeiture of charter of a corporation until so declared by the courts.—*Bloch v. O'Conner Mining & Mfg. Co.*, 129 Ala. 528, 29 South. 925.

But as said by Mr. Spelling, in his work on Corporate Management & By-Laws, § 193, for the purpose of reaching the ends of justice, "courts of equity will sometimes treat a corporation as dissolved, when in legal sense no dissolution has occurred."

While it is held that the loss of all corporate property, the failure to hold regular meetings, or to elect corporate officers, all combined, do not necessarily amount to a forfeiture unless continued for a long term

of years, yet when it is conceded that the objects of the corporation have been entirely abandoned, or when it appears that power to resume business does not exist, then a legal dissolution may be declared.—*Kuehl v. Meyer*, 50 Mo. App. 648.

Our own statute fixes a nonuser of corporate franchise for five years as forfeiting the franchise.—Section 3515, Code.

This court has also held that, although there has been no legal dissolution, yet when it is made to appear that the corporation has failed in its object and purpose, and it appears a continuation of a profitable business cannot be had, a court of equity will administer the assets at suit of stockholders, and while in the case of *Noble v. Gadsden Co.*, 133 Ala. 250, 31 South. 856, 91 Am. St. Rep. 27, the court declined to hold that there could also be a dissolution of the corporation, the court has in the recent case of *Decatur Land Co. v. Robinson*, 184 Ala. 322, 63 South. 522, so determined in the following language of the opinion: "If the corporation cannot successfully operate in the future, and the court takes charge of it and distributes the assets among the stockholders, there is no necessity for the survival of the company, and the court not only has the power to do so, but should dissolve the corportion."

This results, it seems, as an incident to the jurisdiction first obtained for the distribution of the assets of the corporation.

From what is here said, therefore, we think the equity of the bill is clear. The only question is as to when should date the dissolution of the corporation, for the purpose of distribution of these funds.

While the Star of Hope Division No. 4 is a corporate entity by virtue of that act, yet it is plain that it is quite dissimilar from other corporations. No issuance of

stock, and therefore no stockholders. No board of directors, or it would seem no election of officers essential to its corporate existence. It may in reality be termed a "corporate ghost." We think the members may be treated as somewhat akin to those of an unincorporated society, in so far as this question is concerned. In such, a dissolution may be implied as by consent of the members when meetings cease entirely and activity of its members comes to an end. As stated in 1 Bacon, Benefit Societies, § 57.

"The existence of a voluntary association may also be terminated by implied abandonment because of failure to hold meetings, for a protracted period."

We therefore reach the conclusion that under the averments of this bill the dissolution for purposes of distribution should date from the time there ceased any meetings and therefore activity of its members ceased. Such may be treated as an implied abandonment of the objects of the association and a dissolution, or by consent of the then existing members.

In the authorities we have cited here it appears that the assets remaining should go to those who were members at time of dissolution, to those who, in cases of this character, may be properly termed the "persistent members." Under the conclusion we here reach, therefore, this would include those who were members (or, if deceased, their representatives or heirs), at the time the meetings of the association ceased and activity of its members therefore came to an end.

The complainants, by the averments of the bill, bring themselves within the rule, and we think the bill sufficient as against the attack made by the demurrer.

The averments of the bill show there are no officers or trustees now living upon whom a demand for action could be made which is clearly sufficient to justify the

decree overruling the assignment of demurrer taking that point. We do not intend to indicate that in such a bill as this such demand is necessary in any event.— *Decatur Land Co. v. Robinson, supra.* Upon that it is unnecessary to express an opinion.

We conclude, as did the chancellor, that the assignments of demurrer were without merit and were therefore properly overruled.

The decree of the chancellor is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.

### ON REHEARING.

GARDNER, J.—It is now urged upon this application for rehearing that the opinion in this case is silent as to whether or not the bill should show that there has been administration of the estate of James W. Holmes, deceased, through whom complainants claim an interest in the funds, one as a daughter and the other as the widow and devisee of the son of said James W. Holmes.

We think it an entirely sufficient answer to this insistence to say that there is no assignment of demurrer taking such point nor was there any such question raised in brief of counsel on submission of this cause. The first presentation thereof is found in brief in support of this application.

We might add, however, that although the funds here in controversy be personalty, yet it is not in every such case that administration is necessary. If the heirs be of age and there are no debts, then administration may be dispensed with. There would be no necessity therefor. The bill seeks a distribution of the fund among

those interested therein, or entitled thereto, and, if any administration of estate of any deceased member should appear necessary, this is a matter that may be properly provided for by the court in the further progress of the cause.

The question as to ultra vires is also urged upon us on this application. We find no assignment of demurrer taking this point also. However, it may not be improper (though unnecessary) to say that it may be most seriously questioned that the respondent Mobile Temperance Hall Association, having confessedly in its possession funds belonging to said Star of Hope Division No. 4, can be heard to raise any question as to ultra vires.

The application for rehearing is overruled.

Application overruled.