(95 South. 191)

**MOBILE TOWING & WRECKING CO. v. HARTWELL. (1 Div. 242.)**

(Supreme Court of Alabama. Nov. 2, 1922.)

**I. Corporations ⊂⊃152—Amount of dividends within discretion of directors.**

A holder of common stock cannot become entitled to dividends until duly declared (in the absence of fraud) in an amount resting in the sound discretion of the directors and payable out of the profits, with the exception of liquidation dividends.

**2. Corporations ⊂⊃152—Capital stock regarded as trust fund primarily to pay debts before dividends.**

Capital stock is regarded as and is the evidence of a trust fund, primarily for the payment of the debts of the corporation, and, if there is a contest between the rights of creditors and stockholders, the latter are not entitled to dividends or a share of the capital until debts are paid.

**3. Corporations ⊂⊃153—If premature distribution of stock is made before company's debts are paid, stockholders so receiving are subject to pro rata contribution.**

If an improper or premature distribution of stock is made before the payment of the corporation's debts, the stockholder receiving same is subject to contribution pro rata to the payment of such debts from the funds so improperly paid him.

**4. Corporations ⊂⊃151—Dividends unpaid are corporation assets.**

Dividends unpaid are assets of the corporation and liable for its debts.

**5. Corporations ⊂⊃152—Decree for dividend unwarranted in absence of allegation and proof of sufficient available corporate assets.**

Complainant loaned 60 shares of stock to his brother, a shareholder and officer of defendant corporation, and the borrower wrongfully surrendered the shares, had them reissued to himself, and they were thereafter sold at public sale to pay his indebtedness to the company and by the company bought in and held as treasury stock. *Held* that, in a suit to recover the stock and dividends thereon, there was no basis for a decree for dividends in an amount equal to dividends paid other shareholders, in the absence of allegations and proof that the corporation had sufficient assets over and above its liabilities and stock to pay such dividends, because, if the shares originally owned by complainant were entitled to share in dividends, such share would be in the dividend declared and distributed.

**6. Election of remedies ⊂⊃7(1)—Estoppel ⊂⊃57—"Ratification by suit" and "estoppel by suit" distinguished.**

In estoppel by suit the party against whom it is pleaded must have received some benefit thereby, as that the suit was prosecuted to judgment, but the legal effect of a ratification by suit is that no judgment or other advantage is necessary to bind the party so electing to ratify by bringing the suit.

**7. Election of remedies ⊂⊃9—Election between inconsistent remedies not revoked without mutual consent.**

An election made between inconsistent rights or remedies cannot be revoked without mutual consent of the parties at interest in the subject-matter to be affected or being dealt with.

**8. Corporations ⊂⊃123(24)—Purchaser's title unquestioned where stockholder failed to elect to avoid sale of stock pledged as collateral.**

Where the owner of a certificate of stock indorsed it in blank and loaned it to another to use as collateral for a bank loan, which certificate, on failure to pay the loan, was foreclosed and sold by the bank, on failure of the owner to exercise his right to seasonably elect to avoid the sale, if irregular, the title of the bank as purchaser became free from question.

**9. Election of remedies ⊂⊃11—Party concluded by mistake of law in misjudging remedy.**

The owner of a stock certificate indorsed it in blank and loaned it to his brother to be used as collateral for a loan to the brother, and the stock was transferred on the corporation's books to the brother's name and hypothecated to the bank, and on failure of the brother to pay the loan the stock was sold, and where for more than three years the owner asserted no claim against the corporation for the stock or for dividends declared by the company, but sought enforcement of other inconsistent rem-

edies in the courts against his brother and the bank, having misjudged his remedies, he was concluded thereby from asserting, as against the corporation, title to the shares.

**10. Corporations** ⬯126, 164—**Estoppel** ⬯90(1)—**Blank indorsement of certificate authorizing surrender and reissue to borrower and owner estopped to attack corporation's foreclosure of lien for borrower's indebtedness.**

Where complainant indorsed a certificate of corporate stock in blank and delivered it to his brother, a shareholder and officer of the corporation, for the latter to use as collateral, the corporation was authorized to accept the surrender of such certificate and to reissue another to the brother, and the new certificate thereupon became subject to the lien of the corporation for the brother's indebtedness, so that the corporation foreclosing the lien and purchasing the stock became invested with the aliquot share in the corporate property represented by such certificate by reason of the authorized or ratified acts of the brother, and the complainant was estopped to dispute such title.

**11. Election of remedies** ⬯7(1) — **Remedy pursued destroyed stockholder's right to avoid sale of stock held as collateral for loan.**

Where the owner of a stock certificate loaned it to his brother to use as collateral for a loan from a bank, and the brother had the certificate canceled and reissued in his name by the corporation and then hypothecated it, and, on foreclosure and sale of the certificate, the bank purchased it, and thereafter transferred its equity to the former owner, but not until after a suit between the corporation and the bank had determined the ownership of the stock to be in the corporation, on account of debts owing by the brother to the corporation, the former owner by bringing action against his brother for the value of the stock thereby ratified all of his brother's acts and was precluded from thereafter bringing an action against the corporation to recover the stock.

Appeal from Circuit Court, Mobile County; Claude A. Grayson, Judge.

Bill of Guy J. Hartwell against the Mobile Towing & Wrecking Company and Harry T. Hartwell. Decree for complainant, and the Mobile Towing & Wrecking Company appeals. Reversed and rendered.

See, also, 201 Ala. 419, 78 South. 797.

The bill alleges that Guy J. Hartwell was the owner of 60 shares of the capital stock of the Mobile Towing & Wrecking Company; that on March 16, 1914, respondent Harry T. Hartwell, brother of complainant, requested complainant to lend him said 60 shares of stock in order that he might use the same as collateral to protect an indebtedness owing by him to the First National Bank of Lakeland, Fla.; that complainant did so lend said stock, for the purpose, indorsing the certificate in blank; that on May 15, 1914, Harry T. Hartwell wrote and delivered to complainant a letter acknowledging the loan of the stock and inclosed therewith his demand note for $22,500, the estimated value of the stock. A copy of the letter is exhibited with the bill, and reads:

"For and in consideration of the loan to me of your sixty shares of the Mobile Towing & Wrecking Company stock which I am to use as collateral with the First National Bank of Lakeland, Fla., to protect an indebtedness with this bank for account of myself and Mr. Arthur Bailey, I herewith inclose you my note for $22,500.00 dollars for you to hold to protect your interest in the transaction.

"Mr. Bailey is now ill and as soon as he recovers I will have him indorse the note."

It is alleged that while Harry T. Hartwell had promised to have the note indorsed by Arthur Bailey, said Bailey did not indorse the same and denied liability thereon.

On the 16th of March, 1914, it is alleged, there was standing on the books of Mobile Towing & Wrecking Company in the name of Harry T. Hartwell 139 shares of stock, and in the name of the complainant the 60 shares so loaned; that at that time, and long prior thereto, Harry T. Hartwell was vice president, secretary and treasurer of the Mobile Towing & Wrecking Company; that the aggregate stock owned by Harry T. Hartwell and complainant was a majority of the 385 total authorized shares of stock of the corporation; that Harry T. Hartwell was in practical control of the corporation from 1907 until 1915, and voted complainant's stock at all meetings.

It is alleged that Harry T. Hartwell in contravention of his agreement with complainant, and without complainant's knowledge, wrongfully and fraudulently surrendered to the corporation complainant's certificate of stock, issued to himself a new certificate for said 60 shares, signed the same as secretary, and procured the name of the president thereto, and indorsed said new certificate and attached it as collateral to his note or notes to the First National Bank of Lakeland; that complainant's first knowledge of such surrender and reissue was in June, 1916, after publication by the Mobile Towing & Wrecking Company of notice of sale by it of the said stock.

It is alleged that in May, 1916, the Mobile Towing & Wrecking Company claimed that Harry T. Hartwell was indebted to it by reason of his use of the funds of the corporation without its knowledge or consent, and on May 19, 1916, addressed a letter to Harry T. Hartwell demanding payment; that said Hartwell failing to pay said indebtedness, the corporation, after giving notice, attempted to sell the stock in question at public outcry, and, being the highest bidder, itself became the purchaser at and for the sum of $2,000, which was credited on the indebtedness of Harry T. Hartwell to it; that prior to such attempted sale Harry T. Hartwell

---

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

wrote a letter to the corporation notifying it that the stock in question was the property of complainant; that it had been loaned by complainant to him for the purpose heretofore stated; and that the facts relative to such loan were well known to the corporation and its officer.

It is alleged that the complainant did not know at the time of loaning his stock to Hartwell, nor for some time thereafter, that Hartwell was indebted to the corporation in any manner.

It is alleged that since the stock was never at any time the property of Harry T. Hartwell, the Mobile Towing & Wrecking Company never acquired any lien thereon; that the corporation had notice of the limited purpose for which the stock was loaned, and prior to its attempted sale had written notice of the status of the stock.

The bill further alleges that the First National Bank of Lakeland brought suit against Harry T. Hartwell, recovered judgment for $13,354.98, and the same remaining unpaid on June 23, 1916, offered the stock in question for sale, and it, being the highest bidder, purchased the stock for $1,500, which it credited on said judgment; that on June 11, 1917, Harry T. Hartwell and Arthur Bailey paid the judgment except to the extent of $1,500, for which they received credit on account of 'said stock, agreeing that the title of the bank to the stock should remain unimpaired, but that the debtors in the judgment did not warrant the title to the stock obtained at such foreclosure.

It is alleged that on June 24, 1916, after demand on' the Mobile Towing & Wrecking Company to make transfer on its books of the stock, in question, and after its refusal, the First National Bank of Lakeland brought suit against the corporation and Harry T. Hartwell to establish its title to such stock and to compel such transfer; that in said litigation, in which the rights of this complainant were not involved, relief was granted to the Mobile Towing & Wrecking Company. 201 Ala. 419, 78 South. 797.

It is alleged that on March 6, 1920, complainant entered into an agreement with the First National Bank of Lakeland by which the bank released all claims against the stock in question to complainant; that in making such agreement it was complainant's desire to obtain the certificate for 60 shares of stock issued to Harry T. Hartwell in order that he might surrender the same to the corporation in making demand for a certificate issued in his own name.

The bill further alleges that on March 22, 1917, complainant believing that the First National Bank had title to the stock in question, and that the same was lost to him, he brought suit against Harry T. Hartwell and Arthur Bailey on the note given by Harry T. Hartwell to complainant; that thereafter he took a nonsuit in said action under an agreement with said Hartwell and Bailey that, unless said Hartwell delivered to complainant a certificate for 60 shares of stock in the Mobile Towing & Wrecking Company, or paid to him the sum of $24,750, within 12 months, complainant should reinstate the action; that thereafter the Supreme Court rendered its decision in the case of Mobile Towing & Wrecking Co. v. First National Bank of Lakeland, 201 Ala. 419, 78 South. 797, and complainant abandoned the idea of attempting to collect said note.

The bill further alleges that since the attempted sale by the Mobile Towing & Wrecking Company on June 26, 1916, the corporation has treated said 60 shares .of stock as treasury stock; that since that time the corporation has declared and paid to its stockholders two dividends, one on September 18, 1918, for $48 a share, and one, on December 19, 1919, for $30 a share; that no dividends were paid on the stock in question and that complainant is entitled to dividends amounting to $4,680; that on March 9, 1920, complainant made demand on Mobile Towing & Wrecking Company for issue to him of certificate for 60 shares of stock, and payment of dividends due thereon; and that said corporation has refused to comply with such demand.

Complainant offers to surrender the certificate for 60 shares of stock to Harry T. Hartwell, surrendered to him by the First National Bank of Lakeland, upon issue of a new certificate to him by the Mobile Towing & Wrecking Company.

The prayer of the bill is that the 60 shares of stock in question be declared the property of complainant; that the Mobile Towing & Wrecking Company be required to transfer same to complainant on its books, and to issue a new certificate therefor; and that the corporation be ordered to pay complainant $4,680 as dividends.

Smiths, Young, Leigh & Johnston, of Mobile, for appellant.

Guy Hartwell's transfer and assignment in blank of his stock upon the back of the certificate authorized Harry T. Hartwell, or any other person to whom he might transfer the stock by delivery of the certificate, to fill in such blank with his own name, and, when so filled in, the stock stood properly transferred to the person whose name was so inserted. 186 Ala. 603, 65 South. 147; 113 Ala. 380, 21 South. 75; 203 Ala. 446, 83 South. 338, 7 A. L. R. 1658; 179 Ill. 283, 53 N. E. 590; 205 Pa. 197, 54 Atl. 785, 97 Am. St. Rep. 735; 11 Del. Ch.' 190, 98 Atl. 943. Assignment of the stock to the First National Bank of Lakeland created a chattel mortgage, regardless of whether it was accomplished through transfer upon the books of the company to the name of Harry T. Hartwell, or by mere delivery to the bank of the original stock certificate. 204 Ala. 445, 85

South. 816. The election of Guy Hartwell to treat the stock as lost by its sale to the bank, and to hold Harry Hartwell and Arthur Bailey responsible therefor upon their note, operated as a ratification of such sale. 6 Ala. 197; 185 Ala. 201, 64 South. 90; 14 Ala. App. 152, 68 South. 593. The suit by Guy Hartwell for the agreed value of the stock was an election to treat the stock as sold to Harry T. Hartwell, and not merely loaned to him. 159 Ala. 367, 49 South. 97; 106 Ala. 397, 17 South. 536. A plaintiff in a suit is not estopped from setting up an inconsistent right with that asserted in the suit, unless he has, by his suit, obtained an advantage, whether that advantage be the recovery of a judgment and its satisfaction, or some other. 98 Ala. 495, 12 South. 815; 97 Ala. 383, 12 South. 398. It is not material whether defendant had notice of the equities of Guy Hartwell or not. Such notice would not have prevented title passing to the First National Bank, and thereby destroying any interest that complainant otherwise would have had in the stock. The stock purchased by the bank was the same stock that was assigned by Guy Hartwell to Harry Hartwell. The shares of stock represent the stockholders' interest in the company's property and franchises, while certificates of stock are mere evidences of such ownership. 204 Ala. 446, 85 South. 816; 206 Ala. 254, 89 South. 793, 19 A. L. R. 118. No stockholder can become entitled to dividends until they have been regularly declared, and dividends can only be declared out of the profits of the company. Cook on Stock & Stockholders, §§ 534, 539, 548; 11 Ala. 477.

Stevens, McCorvey, McLeod & Goode, of Mobile, for appellee.

In order for the doctrine of estoppel to be successfully invoked, it is necessary for the person asserting the same to show that the person sought to be estopped has, by his words, acts, conduct, or silence, induced another, on the faith thereof, to pledge his credit, incur a liability, or part with something valuable; it being essential to an estoppel that the party asserting the same has been induced by the declaration or conduct of another to act or desist from acting to his detriment. 76 Ala. 194; 201 Ala. 419, 78 South. 797. Notice to an agent or officer of a corporation is notice to the corporation. However, there is an exception in those cases where the officer or agent has a personal interest adverse to that of the corporation; but this exception does not apply where the officer or agent receiving the notice, even though his interest is adverse to that of the corporation, is the sole person or agency by which the corporation is represented in the matter. 193 Ala. 120, 69 South. 508; 199 Ala. 659, 75 South. 310. Mistaken or unsuccessful suits are held not to be an election, and the mere bringing of a suit, or the presentation of a claim against an estate, without prosecuting it to final determination or judgment, cannot determine the right of election to pursue that and no other remedy open to complainant. 138 Ala. 472, 35 South. 469, 100 Am. St. Rep. 45; 97 Ala. 681, 12 South. 295; 169 Ala. 588, 53 South. 799, 34 L. R. A. (N. S.) 309; 20 C. J. 31. If a dividend is declared, and no time is fixed for its payment, it is payable on demand. 14 C. J. 810; 6 Fletcher's Cyclopedia of Corporations, § 3675. The declaration of a dividend creates a debt against the corporation in favor of each stockholder to the amount due him, and he may recover the same in an action against the corporation. 14 Corpus Juris, 815; 6 Fletcher's Cyclopedia Corporations, § 3653; Cook on Corp. § 542; 195 Ala. 219, 70 South. 179.

THOMAS, J. The bill was filed March 13, 1920, amended November 12, 1921, and on hearing there was a decree for complainant.

The decree fixed the ownership of 60 shares of stock in a corporation and awarded a money judgment for dividends from the time the corporation began to treat the stock as being treasury stock, acquired in the enforcement of its statutory lien against a stockholder for his indebtedness to the corporation. Section 3476 of Code of 1907; Montgomery Bank & Trust Co. v. Jackson, 190 Ala. 416, 67 South. 235; Walsh et al. v. State ex rel. Cook, 199 Ala. 123, 131(10), 74 South. 45, 2 A. L. R. 551; Rowe v. Bank of New Brockton, 207 Ala. 384, 92 South. 643.

The bill avers that of two dividends that have been declared by the corporation, all had been paid to stockholders, other than alleged stockholder whose stock was sold and purchased by the corporation and treated as being retired, and did not aver that the corporation's earnings and assets were in excess of its liabilities and sufficient to authorize a declaration of further dividends in the amount of $4,680, the amount claimed. There is slight analogy found in Boyette v. Preston Motors Corporation, 206 Ala. 240, 89 South. 746, 18 A. L. R. 1376, where the issue of further stock was declined, for the reason that it was not shown there existed authorized capital stock that was unissued and available for the issue as prayed.

[1-4] The general rule is that a holder of common stock of a corporation cannot become entitled to dividends until the same is duly declared (in the absence of fraud) in an amount resting in the sound discretion of the directors and payable out of the profits of the corporation, with the exception of liquidation dividends. Smith v. Prattville Mfg. Co., 29 Ala. 503, 508; Wolfe v. Underwood, 96 Ala. 329, 333, 11 South. 344; King v. Livingston Mfg. Co., 192 Ala. 269, 279, 68 South. 897. The capital stock of a corpo-

ration is regarded as and is the evidence of a trust fund, primarily for payment of the debts of the corporation; if there is a contest between the rights of creditors and stockholders, the latter are not entitled to any dividends or share of the capital of the corporation until its debts are paid. If an improper or premature distribution of the stock is made before the payment of its debts, the stockholder receiving the same is subject to contribution pro rata to the payment of such debts from the funds so improperly paid him; and upon an ascertainment, a court of chancery will consider all cross-liabilities or equities in a proper adjustment of the rights of the parties, having regard for the protection of creditors. Paschall v. Whitsett, 11 Ala. 472, 477; Mobile Temperance Hall Ass'n v. Holmes, 189 Ala. 271, 65 South. 1020. See, also, Cook on Stock and Stockholders, §§ 534, 535, 548; 14 C. J. § 1207, p. 798, et seq.; 7 R. C. L. p. 283, et seq. Dividends unpaid are assets of the corporation and liable for its debts. Curry v. Woodward, 44 Ala. 305.

[5] The dividends declared by the corporation aggregating $78 per share were declared and paid, respectively, September 18, 1918, and December 19, 1919, upon the stock of the corporation that was treated as outstanding or on 186 shares. That is to say, no dividends were declared upon the 199 shares of stock that stood upon the books of the corporation in the name of Harry T. Hartwell and which were purchased by the corporation at its sale in the enforcement of the corporation's lien against said stockholder. After its purchase this treasury stock embraced the 60 shares of stock that were originally held by Guy Hartwell, and by him assigned in blank to his brother, Harry T. Hartwell, who surrendered same and procured the reissue on the books of the corporation of a like amount of stock to such holder or assignee. The dividends duly declared by the corporation aggregated $14,508, and were all paid out by the corporation to the holders of the 186 shares of the original 385 shares of stock.

The decree of the court for an additional dividend of $4,680 upon the 60 shares of stock originally owned by Guy Hartwell was without regard to the exercise of a reasonable discretion on the part of the directors of this corporation, or that all profits had not theretofore been declared and paid out as dividends. The prayer of the amended bill is:

"Your orator further prays that your honors will further decree and order the said Mobile Towing & Wrecking Company to forthwith pay over to your orator the sum of $4,680 as the amount due to orator as dividends which have accrued and become due and payable on said 60 shares of stock since June 26, 1916, at which time the said Mobile Towing & Wrecking Company began to treat and consider the said stock as treasury stock."

The agreement of counsel of the facts as to declaration of dividends is:

"Since the said sale of June 26, 1916, and since the time the Mobile Towing & Wrecking Company commenced to treat the 60 shares of stock in question as treasury stock, the said Mobile Towing & Wrecking Company has declared and paid to its stockholders two dividends, one being a dividend of $48 per share declared and paid on September 18, 1918, and the other being a dividend of $30 per share declared and paid on December 19, 1919, no dividend being paid on the 60 shares of stock involved in this litigation."

In the absence of appropriate allegations and proof of the sufficiency of the corporation's assets over its liabilities and stock, the decree for the $4,680 was unwarranted. The effect of the declaring of the dividends only to the amount of $14,508 was prima facie a declaration by the directors that dividends in the amount of $19,188 may not be declared. If the 60 shares of stock in the corporation that were originally owed by Guy Hartwell had been entitled to share in dividends, it was in $14,508 duly declared and not in $19,188 as decreed by the trial court.

[6, 7] Is complainant entitled to relief under any aspect of his bill? An understanding of one phase of the case requires an observance of the distinction between ratification and estoppel by suit. In the latter, the party against whom estoppel by suit is pleaded must have received some benefit thereby, as that the suit was prosecuted to judgment. Todd v. Inter. Mortg. & Bond Co., 196 Ala. 169, 174, 71 South. 661; Register v. Carmichael, 169 Ala. 588, 590, 53 South. 799, 34 L. R. A. (N. S.) 309; Hunnicutt v. Higginbotham, 138 Ala. 472, 479, 35 South. 469, 100 Am. St. Rep. 45; Huntsville Belt Line v. Corpening, 97 Ala. 681, 12 South. 295; Alexander v. Mobile Auto Co., 200 Ala. 586, 589, 76 South. 944; Ivy v. Hood, 202 Ala. 121, 123, 79 South. 587. In the former, the legal effect of a ratification by suit is that no judgment or other advantage is necessary to bind the party so electing to ratify by bringing the suit. Hartsell v. Roberts, 185 Ala. 201, 205, 64 South. 90; Newman v. Morgan, 202 Ala. 606, 81 South. 548; Capital Security Co. v. Owens, 196 Ala. 385, 387, 72 South. 8; Alexander v. Mobile Auto Co., supra; Herring v. Skaggs, 73 Ala. 446, 466; Van Winkle v. Crowell, 146 U. S. 42, 13 Sup. Ct. 18, 36 L. Ed. 880; Baker v. Clarke, 14 Ala. App. 152, 157, 68 South. 593, and authorities; 11 Ency. of Law (2d Ed.) Estoppel, p. 446. It is important to note that an election made between inconsistent rights or remedies cannot be revoked without mutual consent of the parties at interest in the subject-matter to be affected or being dealt with. Alexander v. Mobile Auto Co., supra; Lowy v. Rosengrant, 196 Ala. 337, 342, 71 South. 439; Ex parte Logan, 185 Ala. 525, 527, 531, 64 South. 570, 51 L. R. A. (N. S.) 1068, Ann. Cas. 1916C,

405; Continental Jewelry Co. v. Pugh Bros., 168 Ala. 295, 53 South. 324, Ann. Cas. 1912A, 657; Zavelo v. Cohen Bros., 156 Ala. 517, 521, 47 South. 292; Hickman v. Richburg, 122 Ala. 638, 26 South. 136; Fuller v. Eames, 108 Ala. 464, 466, 19 South. 366; Thomason v. Lewis, 103 Ala. 426, 15 South. 830; Montgomery Iron Works v. Smith, 98 Ala. 644, 13 South. 525; Lehman Durr & Co. v. Van Winkle, 92 Ala. 443, 8 South. 870.

[8; 9] Appellant says that if Guy Hartwell had an equity to or interest in the 60 shares of stock in question after his indorsement in blank and delivery of his stock to Harry T. Hartwell for hypothecation to secure the latter's debt to the Bank of Lakeland, it was lost by means of the sale of the stock by the bank on June 23, 1916; and that, if such is the effect of his act, it is immaterial whether the Mobile Towing & Wrecking Company did or did not subsequently obtain title to the stock by its sale to enforce lien against Harry T. Hartwell's stock. That is the equivalent of saying—it is not material whether there was knowledge or notice by or to the Mobile Towing & Wrecking Company of the limited purpose for the loan of the stock by Guy to Harry T. Hartwell—the result is the same. The right of the Bank of Lakeland to foreclose and sell the stock, whether held by it by way of a transfer of Guy Hartwell's stock on the books of the corporation to Harry T. Hartwell and then its transfer on hypothecation to the bank, or by the hypothecation of the original certificates indorsed in blank by Guy Hartwell; the sale of the same by the bank in either event would divest the Hartwells of title or interest subject to a seasonable election of avoidance if the sale was irregular.

The complainant failing to exercise any such right within the time recognized by this court as reasonable, thereafter the title in such purchaser was free from question by Guy Hartwell. Barnett v. Dowdy (Ala. Sup.) 93 South. 638.[1] For more than three years complainant made no claim, as now sought to be asserted to the stock and dividends, although he was informed or had knowledge of the fact that Harry T. Hartwell had surrendered the original shares in question and procured the issue in his name on the books of the corporation a like number of certificates and shares of capital stock in the corporation. The excuse of Guy Hartwell for this delay is not sufficient in a court of equity—that he believed he had lost his stock by its transfer in blank and its delivery to and hypothecation by his brother, its sale on June 23, 1916, by the holder thereof, and that it was only when this court on April 18, 1918, decided the case of the bank et al., that he became aware of the interest or equity he seeks to assert by his bill filed March 13, 1920, and as amended November 12,

1921. Meanwhile, he had sought the enforcement of other inconsistent rights and remedies in the courts. If the complainant was not informed of, or misjudged his remedy under the law in manner or for reason indicated above (in the absence of any fraud on the part of the respondent), he is concluded by his mistake of law (Norwood v. L. & N. R. Co., 149 Ala. 151, 42 South. 683; Sims v. Riggins, 201 Ala. 99, 105, 77 South. 393; De Sota Coal Min. & Dev. Co. v. Hill, 194 Ala. 537, 69 South. 948; Id., 188 Ala. 667, 65 South. 988), and his ratification of the acts of his brother (as to the issue and hypothecation of his stock) by his former suit at law for recovery from his brother and another of the value of his stock.

[10] It may be further said that complainant must fail in this action, because on June 24, 1916, the Bank of Lakeland filed its bill against this defendant-appellee asserting title to the 60 shares of stock and the Mobile Towing & Wrecking Company filed its answer and cross-bill thereto, asserting title to the stock, the fact of its acquisition in the enforcement of its statutory lien against one of its stockholders, and that this lien was superior to the right, title, or lien of the Bank of Lakeland under the hypothecation, foreclosure, and purchase by the bank. This court sustained the superiority of the claim or title of the Mobile Towing & Wrecking Company, granted the relief prayed in the cross-bill; that the title to said stock be declared to be in the Mobile Towing & Wrecking Company rather than in the Bank of Lakeland. Mobile Towing & Wrecking Co. v. First National Bank of Lakeland, 201 Ala. 419, 78 South. 797. Such is the effect of that decision; that the title acquired by the Bank of Lakeland was subordinate or subject to enforcement of the corporation's lien under the statute for payment of the debt of such stockholder. Guy Hartwell's indorsement of his stock in blank and delivery to his brother authorized its surrender and reissue under such circumstances as to make it subject to the lien of the corporation; the foreclosure or enforcement of that superior lien by the Mobile Towing & Wrecking Company invested defendant with the title to the aliquot share or interest in the corporation's properties, franchise, etc., evidenced by the 60 shares of stock in question. Oden v. Vaughn, 204 Ala. 445, 85 South. 779; Randle v. Winona Coal Co., 206 Ala. 254, 89 South. 793, 19 A. L. R. 118. Hence the question of what stock that was hypothecated with the bank by Harry T. Hartwell, in view of its due assignment by Guy Hartwell, was immaterial. The aliquot interest or share in the corporation's properties, franchise, etc., had passed from Guy Hartwell to another by and through the authorized or ratified acts of his brother, Harry T. Hartwell. Oden v. Vaughn, supra; Randall v. Winona Coal Co., supra;

1 207 Ala. 641.

Dawsey v. Kirven, 203 Ala. 446, 83 South. 338, 7 A. L. R. 1658; Bank of Tupelo v. Thompson, 186 Ala. 600, 65 South. 147; Nelson v. Owen, 113 Ala. 372, 380, 21 South. 75.

[11] The demurrer challenged the sufficiency of the bill, showing as it does that the Lakeland Bank acquired Guy Hartwell's title in the manner indicated; and that the latter never thereafter acquired any subsequent interest or title thereto before the title of Mobile Towing & Wrecking Company had been adjudicated superior to that of the Bank of Lakeland, and as the subsequent right, if acquired by Guy Hartwell (subsequent to that of the Mobile Towing & Wrecking Company) by relinquishment by the bank of its interest, did not give the bill equity as against the Mobile Towing & Wrecking Company, a corporation. The demurrer should have been sustained on such ground. The submission for decree was on demurrer, pleadings, and proof. The decree of the lower court, or rather the opinion therein, did not make mention of this phase of the case under the agreement of facts, showing a ratification by suit by Guy Hartwell of the acts of Harry T. Hartwell as indicated and bound him by reason of his having sought to pursue an inconsistent remedy in relation to the stock. The sale (of stock) was June 23, 1916, and on March 22, 1917, Guy Hartwell sued at law Harry T. Hartwell and another, upon his note for the agreed purchase price of that stock. It was alleged in that complaint that the Bank of Lakeland, under the authority contained in the collateral note of Harry T. Hartwell and Arthur Bailey, foreclosed and sold the stock, purchased the same (on June 23, 1916), that said defendants were not in position to return the stock to plaintiff, in that it had been so lost to him, etc.

If the purchase of the stock at its sale, by the Bank of Lakeland, was voidable, such an unequivocal election and ratification by suit by Guy Hartwell to treat the stock as lost to him by that sale, and to hold Harry T. Hartwell and Arthur Bailey responsible for the agreed value thereof evidenced by the writing exhibited in the complaint, destroyed the right of Guy Hartwell to elect to avoid the sale by said bank. Alexander v. Mobile Auto Co., 200 Ala. 586, 76 South. 944; Gulf Coal & Coke Co. v. Musgrove, 195 Ala. 219, 70 South. 179; Finney v. Studebaker Co., 196 Ala. 422, 72 South. 54; First National Bank v. Henry, 159 Ala. 367, 378, 49 South. 97; Bradfield Co. v. Patterson, 106 Ala. 397, 401, 17 South. 536; Potts v. First National Bank of Gadsden, 102 Ala. 286, 14 South. 663. To this, appellee replies that the suit for the conversion of the stock and for its value was not prosecuted to a judgment. This is the rule of an estoppel by suit, but not that of a ratification by such action. Complainant made the election that

was a ratification by suit, when he brought the action at law for recovery of value of the stock lost to him by its sale, aside from the agreement thereafter with Guy Hartwell on the part of defendants to pay the costs incurred, to give further time for delivery of the stock, and, in event of failure, to again waive the tort and prosecute the suit for failure of redelivery of the stock. Under this agreement Guy Hartwell took a nonsuit, having obtained a benefit—costs and attorneys' fees. The benefits indicated were not necessary to a ratification by suit when inconsistent remedies were known to exist. This suit for the value of the stock, its dismissal under the agreement as we have indicated, the failure of complainant to duly and seasonably elect to avoid the sale for more than two years after the right of election and avoidance accrued and was known or should have been known to him (June 21, 1916, notice to March 13, 1920, when the bill was filed), amounted to a binding ratification by Guy Hartwell of all the acts of Harry T. Hartwell, that made possible the sale, and that the ratification of said sale precluded a recovery by him in this action.

The decree of the circuit court in equity is reversed, and a decree is here rendered denying the relief prayed for and dismissing the bill at the cost of appellee.

Reversed and rendered.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.